Rebecca BECKMANN, Beth Senn, Martina Moore, Diana Rios, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CBS, INC., d/b/a WWJ–TV, d/b/a WFRV–TV, d/b/a WBBM–TV, d/b/a WCBS–TV, d/b/a KCBS–TV, d/b/a WCCO–TV, International Brotherhood of Electrical Workers, and Local 292 International Brotherhood of Electrical Workers, AFL—CIO, Defendants.

No. Civ.3–96–1172(DWF/AJB).

United States District Court, D. Minnesota.

March 31, 2000.

Susan E. Stokes, Lisa C. Stratton, Sprenger & Lang, Minneapolis, MN, for Plaintiffs.

David J. Goldstein, Faegre & Benson, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The Plaintiffs are female technical employees at the Defendant television stations. The Plaintiffs allege that the Defendants discriminate against female technical employees in employment decisions and maintain a hostile work environment.

The matter is currently before the Court pursuant to the Plaintiffs' motion for class certification and the Defendants' motion for summary judgment. For the reasons stated, the motion for certification is granted and the motion for summary judgment is denied.

The parties also moved to strike certain of the other party's submissions. At the hearing, the Court ruled that certain evidence was excluded. The parties' motions to exclude other evidence is denied.

### Background

The four named Plaintiffs are or were employed as technicians at three CBS television stations: Plaintiffs Beckmann and Senn at WCCO–TV in Minneapolis, Plaintiff Moore at WBBM–TV in Chicago, and Plaintiff Rios at KCBS–TV in Los Angeles.

In summary, the Plaintiffs allege that CBS and the Defendant stations systematically discriminate against female technical employees in assignments, promotions, training, and overtime, and by maintaining a hostile work environment. The Plaintiffs allege that female technicians are segregated in non-advancement track assignments, while males are placed in assignments and given training that results in further advancement and additional compensation, such as supervisory pay and overtime. The Plaintiffs allege that supervisors' unfettered discretion in determining which technicians receive training and remote assignments, which lead to overtime and advancement opportunities, serves as a vehicle for discrimination against female technicians. The Plaintiffs also allege that Defendant CBS' centralized personnel policies are appropriately challenged on a class-wide basis for CBS' failure to prevent or respond to complaints of discrimination against class members.

The Plaintiffs' statistical expert opined that the average total gross earnings for female staff employees is less than the earn-

ings for males at every station, every year from 1993 to 1998. (Drogin Dec. at ¶ 8(e).) He further declared that the difference in total gross earnings paid to men and women in staff positions is in large part due to differences in overtime earnings, in that men were paid more than twice as much overtime per person than women, on the average during 1993 to 1998. (Drogin Dec. at ¶ 13.) The Plaintiffs' expert opined that the average overtime earnings for female staff employees were less than the earnings for males at every station during every year from 1993 to 1998. (Drogin Dec. at ¶ 8(g).)

The Plaintiffs' expert offered the opinion that women are under-represented in staff (full-time) positions, compared to females' representation in per diem (part-time)[1] positions. (Drogin Dec. at ¶ 8(a).) The Plaintiffs' expert opined that women received fewer promotions from per diem to staff and from technician to higher level jobs than would have been expected from their representation in per diem and technician jobs between 1993 and 1997. (Drogin Dec. at ¶ 8(i).)

Finally, the Plaintiffs' expert declared as follows:

> women tend to be concentrated in the lower paying per diem jobs, instead of staff jobs [charts omitted]. During 1993–98, women held between 22% and 27% of per diem positions, but 15–17% of staff jobs. Per diem employees earn about 1/4 as much as staff employees, on the average. Both of these patterns are consistent across stations.

(Drogin Dec. at ¶ 9.)

The following summary of some of the claims of the named Plaintiffs and a few proposed class members represents merely a small sampling of the massive record of deposition and declaration testimony submitted from female technicians at each station.

Plaintiff Rebecca Beckmann of WCCO–TV testified that she had been denied three promotions that went to males. (Ex. 201, Beckmann Dep. at pp. 93–94.) For example, she was denied one promotion because she lacked

a specific type of training; she had repeatedly requested this training, however, and had never received it. (Beckmann Dep. at pp. 146–58.) Plaintiff Beckmann testified that she complained to management over the years but nothing was ever done. (Ex. 201, Beckmann Dep. at p. 538.)

Plaintiff Diana Rios of KCBS–TV testified that she had been denied overtime and had complained to a supervisor that the distribution of overtime was inequitable. (Ex. 206, Rios Dep. at p. 651.) Plaintiff Rios also tried consistently, although largely unsuccessfully, to get training and assignments in more technical areas. (Ex. 206, Rios Dep. at p. 653.) For example, Plaintiff Rios testified that, in the fall of 1997 or the spring of 1998, she tried to get an opportunity to work with new technology that the station was planning to acquire. (Ex. 206, Rios Dep. at p. 122.) Her requests for training were consistently denied and she eventually had to go outside the system to get the training. (Ex. 206, Rios Dep. at p. 123.) Nevertheless, when the new technology became available, male technicians were instead selected to work on the new equipment. (Ex. 206, Rios Dep. at pp. 129–30.)

Plaintiff Rios also testified that she was subjected to vulgar language, cursing and yelling, and general hostility to the women working; for example, a drawing was posted in the work area that depicted naked female bodies with blood dripping from stab wounds. (Ex. 206, Rios Dep. at p. 275.) When she complained to management, nothing was done. (Ex. 206, Rios Dep. at p. 275.)

Plaintiff Martina Moore of WBBM–TV testified that "over the entire time that [she has] worked at WBBM," she was denied training and opportunities to which her male counterparts had access, which caused her to earn less money, garner less experience, and harmed her ability to advance her career within the corporation. (Ex. 204, Moore Dep. at pp. 14–15.) Plaintiff Moore also testified that she was frequently referred to by numerous sexual slurs. (Ex. 204, Moore Dep. at 397–98.)

---

1. The term "part-time" is a bit of a misnomer because per diem employees often work 40 or more hours per week, as demand requires; however, per diem employees do not receive benefits.

Plaintiff Beth Senn of WCCO–TV testified that male employees were given training that she was denied. (Ex. 208, Senn Dep. at pp. 142, 145.) Every time she requested the training that her male counterparts were provided, her supervisor made derogatory comments such as she "wasn't smart enough." (Ex. 208, Senn Dep. at p. 312.) Plaintiff Senn also testified that her supervisor continually made sexually vulgar and derogatory comments, including physical comparisons involving female co-workers. (Ex. 208, Senn Dep. at pp. 125–26.) When she complained, Plaintiff Senn received the response that, "boys will be boys." (Ex. 208, Senn Dep. at p. 127.)

Before the hearing, the Plaintiffs had submitted 14 declarations from prospective class members at all five stations, which included substantially similar allegations regarding assignments, training, promotion, overtime, a hostile environment, and lack of a response to complaints. (Exs.302–20.)

For example, Linda Karpell, a prospective class member, testified that she was consistently excluded from overtime assignments that were almost exclusively given to males; when she complained, supervisors made statements such as "you don't have the same family responsibilities" or "a woman couldn't handle the story." (Ex. 310, Karpell Dec. at ¶ 4.)

Another prospective class member testified that she had been turned down for several promotions that had gone to men who often had less experience, the latest such experience having occurred in August or September of 1994. (Ex. 318, Roshong Dec.) When she asked why she had not been selected for the first promotion, in April or May of 1994, the manager replied, "I had one of you girls in this position before, and it didn't work out." (Ex. 318, Roshong Dec. at ¶¶ 10–12.) After she observed that women were not getting equal training or assignments, she complained all the way up the chain of command; when she finally spoke with Perry Kidder, the Station Manager, he responded, "It's a man's world and there is nothing we can do about it." (Ex. 318, Roshong Dec. at ¶¶ 19–23.)

On October 29, 1999, in connection with a prospective class member's administrative charge, the EEOC issued its finding as follows:

> Evidence of record indicates that Charging Party and other similarly situated female Technicians have been discriminated against by Respondent. The evidence indicates that female Technicians have been subjected to disparate treatment in salary,[2] amount of over-time, promotion opportunities, and training. In addition, evidence of record indicates a sexually hostile environment at Respondent, in that female Technicians have been subject to endure verbal sexual harassment by their colleagues and by management. Evidence of record also indicates that several female Technicians have been retaliated against for complaining about sex discrimination.

(Ex. 1.)

The EEOC thus concluded that "there is reasonable cause to believe that Charging Party and other similarly situated females have been discriminated against in violation of Title VII." (Ex. 1.)

### Discussion

■ A court should not delay a class certification decision until after a decision is reached on the merits. *Paxton v. Union Natl. Bank,* 688 F.2d 552, 558 (8th Cir.1982). Consequently, courts have generally held that class certification issues should be addressed before consideration of a dispositive motion. *Bowling v. Pfizer, Inc.,* 142 F.R.D. 302, 303 (S.D.Ohio 1991) (citing cases). Accordingly, the Court will address the Plaintiffs' motion for class certification first.

### I. Plaintiffs' Motion for Class Certification

#### A. Standard for Certification

In order to proceed with a class action, a plaintiff has the burden of showing that the

---

**2.** The Plaintiffs are not asserting that base pay rates are unequal under the Equal Pay Act. Rather, the Plaintiffs are challenging the practices that allegedly prevent them from earning overtime and other premium pay under Title VII. (Pl.Mem. in Opp. to Summ.J. at p. 11 n. 5.)

four requirements of Fed.R.Civ.P. 23(a) are met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Coleman v. Watt*, 40 F.3d 255, 258–59 (8th Cir.1994); *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1213 (D.Minn.1987), *aff'd*, 902 F.2d 1571 (8th Cir.1990).

The plaintiff must then show that the action falls within one of categories listed in Rule 23(b). *Kassover*, 691 F.Supp. at 1213.

In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

Finally, a trial court has broad discretion in determining whether a class action may be maintained. *Bishop v. Committee on Professional Ethics*, 686 F.2d 1278, 1287 (8th Cir. 1982).

### 1. Numerosity

The first requirement of Rule 23(a) is that the class is so numerous that joinder of all members is impracticable. There is, however, no absolute number which satisfies the "numerosity" requirement. *Paxton*, 688 F.2d at 559; *In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990). The Eighth Circuit has not established any rigid rules regarding the necessary size of a class and and the question of what constitutes impracticability depends upon the facts of each case. *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977); *In re Workers'*, 130 F.R.D. at 104.

■ A number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons in the proposed class. *Paxton*, 688 F.2d at 559. In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 559–60.

■ In the present matter, the Plaintiffs allege that payroll data reveal that 165 women worked as technicians at the five stations in the proposed class. Of this number, 71 are staff (full-time) and 94 are per diem (part-time). The Plaintiffs seek to certify only the 71 staff employees as to the overtime claim. The Defendants dispute the Plaintiffs' figures. Nevertheless, the Court finds that joinder of all the members of the putative class would be impractical. Furthermore, in consideration of the above factors, particularly the nature of the action and the inconvenience and inequity of singular plaintiffs trying individual suits against the Defendants involved, the Court finds that the numerosity requirement is satisfied.

### 2. Commonality

■ The rule of commonality requires that there be common questions of law or fact among the members of the class. *Paxton*, 688 F.2d at 561. The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. *Paxton*, 688 F.2d at 561.

Several courts have held that allegations of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operate to discriminate, satisfy the commonality and typicality requirements of 23(a). *Shores v. Publix Super Markets, Inc.*, 1996 WL 407850 at *6 (M.D.Fla. Mar.12, 1996) (citing cases). The *Shores* Court observed that the employer's "policy of delegating hiring and promotion decisions to managers, who make those decisions on the basis of subjective criteria, is a common course of conduct. Plaintiffs' allegations that this course of conduct results in a discriminatory practice is adequate to meet

the commonality requirement of Rule 23." *Shores,* 1996 WL 407850 at \*6.

■ In addition, courts have certified classes including employees of more than one location or division of a company where it has been found: (1) that a single policy prevails in several or all of defendant's subdivisions; (2) that the subdivisions are not autonomous; or (3) where there are specific allegations pertaining to more than one location. *Avagliano v. Sumitomo Shoji America, Inc.,* 103 F.R.D. 562, 578–79 (S.D.N.Y.1984) (citing cases). The commonality requirement is satisfied as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation. *Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 580 (S.D.Ohio 1993).

In the present matter, the Plaintiffs allege, although the Defendants deny, that the policy formulated, disseminated, supported, and coordinated by CBS governs personnel decisions at the Defendant television stations. (Ex. 501; Bielby Dec. at ¶ 9.) All of the television general managers of the respective stations report to Vice President Jonathan Klein. (Ex. 17, Klein Dep. at p. 32; Ex. 19, Moran Dep. at p. 15.) However, Defendant CBS fails to provide any objective standards to follow in filling open positions that apply to all stations. For example, there are no written guidelines for determining promotions from per diem to full-time employees at the stations; instead, such promotions are left to the discretion of the manager at the station. (Ex. 19, Moran Dep. at p. 131.) Similarly, the promotions to higher positions are left to the discretion of the management at the individual stations. (Ex. 20, Spangenberg Dep. at p. 151.) The Plaintiffs allege that job assignments and schedules, including overtime, are similarly left to the discretion of station management. (Ex. 20, Spangenberg Dep. at p. 151; Ex. 13A, Gardner Dep. at pp. 26–27.) Often, promotions were awarded without the positions being posted. (Ex. 4, Moore Dep. at pp. 312–33.)

■ Therefore, the Court finds that the Plaintiffs' allegations of similar discriminatory employment practices across the Defendant stations, including the Defendants' use of entirely subjective personnel processes that operate to segregate the Plaintiffs in a non-advancement career track, satisfy the commonality requirement for class action purposes.

### 3. Typicality

The typicality rule requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. *Paxton,* 688 F.2d at 561. This requirement is generally satisfied if the claims or defenses of the representatives and the members of the prospective class are based on the same legal or remedial theory. *Paxton,* 688 F.2d at 561–62.

In the present matter, the affidavits and declarations of the named Plaintiffs and the prospective class members demonstrate that the named Plaintiffs have the same or similar grievances as the prospective class members. The Plaintiffs claim to have been subjected to the same types of practices, policies, and subjective decision-making procedures that allegedly have prejudiced the class of women they seek to represent. Accordingly, the Court finds that the requirement of "typicality" is satisfied.

### 4. Adequacy

■ The fourth requirement of Rule 23(a) provides that the plaintiffs show that the representatives will fairly and adequately protect the interests of the class. *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 692 (D.Minn.1995). In order to satisfy this requirement, Plaintiffs must show that: (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *In re Potash,* 159 F.R.D. at 692. Otherwise stated, adequate representation turns upon the qualifications and experience of the plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class. *In re Potash,* 159 F.R.D. at 692, quoting *In re Catfish Antitrust Litigation,* 826 F.Supp. 1019, 1037 (N.D.Miss.1993).

Regarding adequacy of counsel, there is no dispute that the Plaintiffs' counsel are experienced in the representation of plaintiff classes, particularly in the area of employment discrimination claims, and have the means to litigate this matter as a class action.

In addition, each named Plaintiff complains of the lack of objective standards for the employment decisions at issue, of being channeled into non-advancement track positions and assignments, and of being subjected to a work environment hostile to women. Although their circumstances and specific allegations are not all identical with each other or with the members of the proposed class, the Court finds that their interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. Therefore, the final requirement is satisfied.

### B. Form of Class Action

Having met the prerequisite showing for the maintenance of a class action, the Plaintiffs are required to establish that this action falls within the categories identified in Fed. R.Civ.P. 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). The relevant categories in the present matter are 23(b)(2) and 23(b)(3).

An action is maintainable under Rule 23(b)(2) when the plaintiff alleges that the defendant has "acted or refused to act on grounds generally applicable to the class," thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *Amchem,* 521 U.S. at 614, 117 S.Ct. at 2245. Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples. *Amchem,* 521 U.S. at 614, 117 S.Ct. at 2245. In the present matter, however, the Plaintiffs are seeking compensatory and punitive damages under Title VII, in addition to injunctive and declaratory relief.

Rule 23(b)(3) adds class actions for damages designed to secure judgments binding all class members except those who affirmatively elect to be excluded. *Amchem,* 521

U.S. at 614–15, 117 S.Ct. at 2245. Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable. *Amchem,* 521 U.S. at 615, 117 S.Ct. at 2245. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem,* 521 U.S. at 615, 117 S.Ct. at 2245–46.

A hybrid Rule 23(b) class has been found to be an appropriate vehicle for class actions such as the one before the Court. *See, e.g., Shores,* 1996 WL 407850 at *9. A hybrid class consists of two stages: (1) the Court resolves the issue of liability under the procedures of Rule 23(b)(2); and (2) the issue of damages is resolved using the "opt out" procedures established for Rule 23(b)(3) actions. *Id.* The Court finds that the hybrid class is the appropriate mechanism for the resolution of this case.

### C. Definition of the Class

#### 1. The Engineering and Operation Department

In the most recent complaint, the Plaintiffs represented their class as consisting of females "employed by the defendant CBS at WCCO–TV and in the Engineering and Operation Department at KCBS, WCBS, WBBM, WFRV and WWJ...." (Second Amended Complaint at ¶ 19.) In their motion for certification, the Plaintiffs seek to remove the Engineering and Operation Department limitation.

The Court allowed discovery regarding technicians outside the Engineering and Operation Department: "Defendant shall further produce personnel files and manager files relating to technicians who may be assigned to departments other [than] the engineering and operations departments of a

station." (March 8, 1999, Order at ¶ 3.) However, when the Plaintiffs sought to again amend their complaint to broaden the department classification, Magistrate Judge Boylan denied the motion for leave to amend, and this Court affirmed. (See Proposed Third Amended Complaint at ¶ 23; June 2, 1999 Order; Aug. 4, 1999, Order.) Therefore, the certified class will retain the departmental limitation pled in the Plaintiffs' Second Amended Complaint.

### 2. Time Period

■ Courts have regularly held that the timely filing of an administrative charge by a named plaintiff in a class action satisfies the charge filing obligation of all members of the class. *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). The class membership period will thus commence 300 days prior to the earliest charge filed relevant to a particular class claim. *Binion v. Metropolitan Pier & Exposition Auth.*, 163 F.R.D. 517, 526 (N.D.Ill. 1995). The "piggybacking" rule will apply if two essential requirements are met: (1) the charge being relied upon must be timely and not otherwise defective; and (2) the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame. *Calloway v. Partners Nat'l. Health Plans*, 986 F.2d 446, 449 (11th Cir.1993).

In addition, the charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII. *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir.1988). The sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination. *Cobb*, 850 F.2d at 359.

■ Plaintiff Beckmann's first EEOC charge, dated August 2, 1994, alleged that "there is a glass ceiling in place with regard to promotion for women" and further alleged that she had been denied training, which later cost her a promotion. (Ex. 603.) The Court will liberally construe Plaintiff Beckmann's charge as triggering the time period for the Plaintiffs' general pattern and practice allegations regarding segregation of female technicians in non-advancement track positions. *See EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir.1992) (permissible scope of the lawsuit is not confined to specific allegations in the charge; rather, it may extend to any discrimination like or related to substance of allegations in charge and which reasonably can be expected to grow out of investigation triggered by charge). Therefore, the time period for the Plaintiffs' class allegation of pattern and practice discrimination must begin 300 days prior to August 2, 1994, or October 6, 1993.

■ However, even liberally construed, Plaintiff Beckmann's charge cannot have triggered the hostile environment claim. The allegations contained within the charge were not sufficiently related to the Plaintiffs' hostile environment claim. *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 673 (8th Cir.1994) (claim of harassment is not like or reasonably related to a claim of discrimination in employment decisions). The Defendants assert that the first class allegation of hostile environment was contained in Plaintiff Beckmann's first amended charge, dated April 30, 1996.[3] Therefore, the time period of the hostile environment claim must begin 300 days prior to April 30, 1996, which, according to the Court's calculation, is July 5, 1995.

In the alternative, the Plaintiffs allege a continuing violation theory in connection with all of their claims, and the class period may later be amended on the merits, accordingly.

---

**3.** As the later allegations regarding a hostile environment were not sufficiently related to the first allegations regarding pattern and practice discrimination, Plaintiff Beckmann's amended charge may not "relate back" to the date of the first charge. *See Washington v. Kroger Co.*, 671 F.2d 1072, 1075 (8th Cir.1982) ("A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date").

The continuing violation theory is discussed below in connection with the motion for summary judgment.

### 3. Equal Pay Act

The Plaintiffs' claims under the Equal Pay Act may not be included in their class action. As a preliminary matter, the Defendants correctly note that the "Plaintiffs' motion for class certification is completely silent as to their claims under the EPA." (Def.Mem. in Opp. at p. 46.) Consequently, the Equal Pay Act claims are not set forth so as to enable the Court to perform the necessary analysis under Rule 23. In addition, it does not appear that the Plaintiffs have complied with the specific requirements of § 16(b) of the Fair Labor Standards Act. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532 (8th Cir.1975) (Rule 23 class action inconsistent with FLSA's requirement that participants "consent in writing"). Therefore, the Plaintiffs' class action may not be maintained under the Equal Pay Act.

### 4. The Class

Finally, therefore, the class is conditionally certified as follows:

> Females who are or have been employed by CBS as technicians at WCCO–TV or in the Engineering and Operation Department at KCBS–TV, WCBS–TV, WBBM–TV, or WFRV–TV for the time period of October 6, 1993 to present who have been, continue to be, or may in the future be discriminated against because of their sex with respect to assignments, promotion, training or overtime; or for the time period of July 5, 1995 to present who have been, continue to be, or may in the future be discriminated against because of their sex with respect to a hostile environment. As it relates to the discrimination as to overtime, the class is limited to female full-time technical employees.

## II. Motion for Summary Judgment

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. Summary judgment must not be granted if a factual dispute is "genuine," meaning that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at the summary judgment stage. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Finally, summary judgment should seldom be granted in employment discrimination cases because discrimination cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994).

### B. Pattern or Practice of Discrimination

A finding of class-wide intentional discrimination requires proof by a preponderance of evidence that the employer engaged in a pattern or practice of unlawful discrimination. *Catlett v. Missouri Highway & Transp. Co.*, 828 F.2d 1260, 1265 (8th Cir.1987). A pattern or practice is present

when the discriminatory acts were not isolated, insignificant, or sporadic, but were repeated, routine, or of a generalized nature; in other words, discrimination must have been the company's standard operating procedure—the regular rather than the unusual practice. *Catlett,* 828 F.2d at 1265; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977).

 A Title VII claim may consist of discriminatory denial of training opportunities and assignment of job duties. *Satz v. ITT Financial Corp.,* 619 F.2d 738, 741 (8th Cir.1980). Specifically, the claim may consist of a continuing pattern of disparate treatment between female and certain male employees in regard to pay, training, opportunities for advancement and job assignments, which affects the female employee's overall upward mobility in the organization. *Satz,* 619 F.2d at 743.

As in *Catlett,* the class in this case presented both statistical evidence of gender disparity and anecdotal evidence recounting instances of discrimination against specific class members. The Eighth Circuit in *Catlett* held that either of those types of proof alone may be sufficient to establish a pattern or practice of discrimination. *Catlett,* 828 F.2d at 1265. The evidence of specific incidents of alleged discriminatory treatment is relevant to the class claims because it may bring "cold numbers convincingly to life." *Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 471 (8th Cir.1984).

For example, within 300 days of Plaintiff Beckmann's first EEOC charge, she was denied a third promotion in favor of a male technician. (Ex. 12, Erickson Dep. at p. 150.) When Plaintiff Beckmann complained to the manager about having been passed over again, the manager explained that the male technician had certain training that was required. (Ex. 12, Erickson Dep. at p. 150.) However, Plaintiff Beckmann had requested the specific training in question, but was not given the training. (Ex. 12, Erickson Dep. at p. 93.) Plaintiff Beckmann's individual allegations are consistent with the statistical evidence regarding promotions set forth by the

Plaintiffs' expert. (*See* Drogin Dec. at ¶¶ 8–9.)

The record set forth in the "Background" section, *supra,* represents merely a small fraction of similar incidents alleged in the record. For example, when a prospective class member from WBBM learned that a higher position had been vacated, she submitted her resume to the director and told him she was interested in the position. (Ex. 40, Kovitz Dec. at ¶ 37.) Although the director repeatedly told the employee that he would interview her, she was never interviewed, and the director instead sought to recruit a male technician for the position. (Ex. 40, Kovitz Dec. at ¶ 37.)

In the summer of 1996, the station announced that it would be relaunching the morning newscast. (Ex. 8, Blue Dep. at p. 109.) No positions on the morning show were posted. (Ex. 13A, Gardner Dep. at p. 108.) Nevertheless, Plaintiff Rios submitted an application for a position on her own initiative. (Ex. 4, Rios Dep. at pp. 134–35.) Instead, the station shifted schedules to give the positions to three male technicians, including one male who worked as a per diem employee. (Ex. 4, Rios Dep. at pp. 134–35; Ex. 8, Blue Dep. at pp. 109–10; Ex. 13A, Gardner Dep. at p. 107–08.)

 The Court has reviewed the massive evidentiary record in the present matter, including the statistical evidence offered by the Plaintiffs' expert and the anecdotal evidence regarding specific incidents set forth by the named Plaintiffs and other class members. The Court has considered the evidence in the light most favorable to the Plaintiffs. In accordance with that standard, the Plaintiffs have presented sufficient evidence of the Defendants' pattern or practice of segregating female technical employees in less lucrative positions that lack opportunity for advancement, through its discriminatory denial of training, assignments, promotions, and overtime. Therefore, summary judgment as to the Plaintiffs' pattern or practice of discrimination claims is not warranted.

## C. Hostile Environment

 A plaintiff may establish a Title VII violation by proving that discrimination

based on sex has created a hostile or abusive work environment. *Rorie v. United Parcel Service, Inc.,* 151 F.3d 757, 761 (8th Cir. 1998), quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In determining whether the work environment is hostile or abusive under Title VII, courts must examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 888 (8th Cir.1998), quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To be actionable, the conduct must have been sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Hathaway v. Runyon,* 132 F.3d 1214, 1221 (8th Cir.1997), quoting *Harris,* 510 U.S. at 21, 114 S.Ct. at 370.

The plaintiff must show both that the offending conduct created an objectively hostile environment and that she subjectively perceived her working conditions as abusive. *Hathaway,* 132 F.3d at 1221. However, once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury. *Howard v. Burns,* 149 F.3d 835, 840 (8th Cir.1998).

The Plaintiffs have submitted testimonial evidence from numerous individuals involving incidents both inside and outside the current class period and involving conduct both directed at themselves and that they observed being perpetuated upon others.

▮ Harassment of employees other than the plaintiff is relevant to show pervasiveness of the hostile environment. *Howard,* 149 F.3d at 838. Furthermore, in hostile environment cases, harassing acts committed outside the 300–day period are nevertheless relevant as background in assessing the sexual content of acts that occurred during the relevant time period or in the case of a continuing violation. *Howard v. Burns,* 149 F.3d 835, 838, n. 1 (8th Cir.1998).

The evidence set forth above in the "Background" section, *supra,* is merely a sampling of the evidence set forth in the record of a hostile environment. For example, the declaration and deposition testimony of female technicians consistently supports the contention that women were constantly referred to by sexual slurs. (*See, e.g.,* Ex. 3, Moore Dep. at pp. 397–98; Ex. 4, Rios Dep. at p. 26; Ex. 5, Naffziger Dep. at pp. 354–55.) The record is similarly consistent that female technicians complained to supervisors and up the chain of command to no avail. (*See e.g.,* Ex. 4, Rios Dep. at p. 309; Ex. 13, Gardner Dep. at pp. 114–19.) Indeed, one male employee who had been the subject of numerous complaints was afterwards selected for a promotion over other female candidates, which then gave the male employee supervisory authority over the female employees who that had complained about him. (Ex. 5, Naffziger Dep. at pp. 354–55.)

The record of incidents discussed in the "Background" section is also a mere small sample of the incidents set forth in the record. For example, Plaintiff Rios testified regarding an individual who constantly fondled his genitals through his clothing when he spoke to female employees. (Ex. 4, Rios. Dep. at pp. 547–48.) Another female employee testified that a male employee would hold up centerfolds of pornographic magazines and compare the female employee's physical attributes to the picture. (Ex. 6, Naffziger Dep. at pp. 335, 351–52.)

▮ The weight of the accumulated evidence, a mere fraction of which is summarized in this Order, is sufficient to demonstrate that the Plaintiffs have met their burden of presenting genuine issues of material fact on their hostile environment claim. Based upon the evidence presented, when viewed in the light most favorable to the Plaintiffs, a reasonable jury could conclude that the Plaintiffs were subjected to a hostile work environment.

## D. Continuing Violation

The Defendants claim that many of the Plaintiffs' claims are untimely. However, as discussed above, in the context of a class

**620**

action, the Plaintiffs are able to "piggyback" on Plaintiff Beckmann's timely EEOC charge. In the alternative, the Plaintiffs have set forth a claim of a continuing violation sufficient to withstand summary judgment.

It is settled law in the Eighth Circuit that the rationale underlying the allowance of actions for continuing discrimination is to provide a remedy for past actions which operate to discriminate at the present time. *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1303 (8th Cir.1997). When a plaintiff challenges an ongoing pattern or practice of discrimination rather than one isolated instance, the alleged violation may be deemed continuing. *Jenson*, 130 F.3d at 1303. As previously discussed, the Plaintiffs have set forth ample evidence of both an ongoing pattern or practice of discrimination and an ongoing hostile environment. Therefore, the Plaintiffs have set forth evidence in the record by which a reasonable jury could conclude that the behavior of which the Plaintiffs complain constitutes a continuing violation.

### Conclusion

The Court has suggested and continues to suggest to the parties that serious efforts be made to achieve a settlement of this matter. All parties are aware that a trial of this action would be extended and complex. Furthermore, a short review of the procedural history of this case reveals that massive expenditures of resources have been made and will likely continue to be made before the matter even reaches a trial. The Court believes that all parties would benefit by closely scrutinizing their positions and seeking a settlement at this time.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Plaintiffs' Motion for Class Certification (Doc. No. 247) is **GRANTED.**

2. The following class is certified:
Females who are or have been employed by CBS as technicians at WCCO–TV or in the Engineering and Operation Department at KCBS–TV, WCBS–TV, WBBM–TV, or WFRV–TV for the time period of October 6, 1993 to present who have been, continue to be, or may in the future be discriminated against because of their sex with respect to assignments, promotion, training or overtime; or for the time period of July 5, 1995 to present who have been, continue to be, or may in the future be discriminated against because of their sex with respect to a hostile environment. As it relates to the discrimination as to overtime, the class is limited to female full-time technical employees.

3. This Order is conditional and may be altered or amended prior to the decision on the merits in accordance with Fed.R.Civ.P. 23(c)(1).

4. The Defendants' Motion for Summary Judgment (Doc. No. 234) is **DENIED.**

5. Motion by Defendant CBS, Inc. (Doc. No. 272) to exclude evidence is **GRANTED IN PART** and **DENIED IN PART.**

6. Motion by the Plaintiffs to strike the affidavits or Joy Sobolov, Dave Haworth, Charles deCourt and Henry Price (Doc. No. 276) is **GRANTED IN PART** and **DENIED IN PART.**