**Robert CARPE, et al., Plaintiffs,**

v.

**AQUILA, INC., et al., Defendants.**

**No. 02-0388-CV-W-FJG.**

United States District Court,
W.D. Missouri,
Western Division.

Sept. 13, 2004.

Andrew L. Zivitz, Karen E. Reilly, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Craig T. Kenworthy, Bozeman, MT, Don R. Lolli, Dysart Taylor Lay Cotter & McMonigle, PC, Kansas City, MO, for Plaintiffs.

Brian D. Martin, Michael Thompson, Rachel Anne Hayes, Lori J. Sellers, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, for Defendants.

## ORDER

GAITAN, District Judge.

Pending before the Court are (1) Plaintiffs' Motion to Certify Class (Doc. No. 82); and (2) Plaintiffs' Motion for Leave to File Amended Motion for Class Certification (Doc. No. 94). Each will be considered below.

### I. *Plaintiffs' Motion to Certify Class (Doc. No. 82)*

■ The party moving for class certification bears the burden of showing that all prerequisites have been satisfied. *Coleman v. Watt,* 40 F.3d 255, 258–59 (8th Cir.1994). Further, the Court retains wide discretion in determining whether certification of a class is appropriate. *Coley v. Clinton,* 635 F.2d 1364, 1378 (8th Cir.1980).

Federal Rule of Civil Procedure 23(a) requires the moving party, as a prerequisite applicable to all class actions, to show:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P. 23(a).* Further, pursuant to Rule 23(b)(3), in addition to meeting the prerequisites of 23(a), the Court must be satisfied "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed.R.Civ.P. 23(b)(3).*

Plaintiffs' present motion is to certify a class action for plaintiffs' claims arising under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiffs wish the class to be defined as:

All persons who purchased or otherwise acquired common stock of Aquila, Inc. during the Class Period—from April 25, 2001, to December 3, 2001—and were damaged thereby. Excluded from the class are the defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

Plaintiffs state that they meet the four prerequisites of Fed.R.Civ.P. 23(a), as well as the Rule 23(b)(3) requirements, making class certification appropriate.

### A. Federal Rule of Civil Procedure 23(a).

#### 1. Numerosity.

■ As noted previously, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Plaintiffs state that joinder of all members of the class would be impractical because the class consists of thousands of members geographically dispersed throughout the United States.

First, number is but one of several considerations relevant to the joinder impracticability issue. In addition to the size of the class, the Court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982) (citing *C. Wright & A. Miller, Federal Practice and Procedure* § 1762); *see also Newberg on Class Actions*, Vol. 1 § 3.06. Upon careful review, the Court is persuaded that judicial economy will be best served through the certification of the proposed class.

Second, while there is no bright line test regarding the minimum number of plaintiffs needed to satisfy the numerosity requirement, there is support for certification of classes much smaller than the proposed class before this Court. *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir.1971) (twenty class plaintiffs). Satisfaction of the numerosity prong does not require that joinder be impossible, but only that plaintiffs will suffer a strong litigational hardship or inconvenience if joinder is required. *Id.* Further, commentators have recognized that:

> Certainly, where the class is very large—for example numbering in the hundreds—joinder will be impracticable. . . . In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.

*Newberg on Class Actions*, § 3.05 at 3–25; *see also 3B Moore's Federal Practice* § 23.05[1] at 23–143–45 (2d ed.1995) ( stating that "while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred . . . have sustained the [Rule 23(a)(1) ] requirement"). Based upon the foregoing analysis, the Court finds that plaintiffs have met the numerosity requirement.

### 2. Commonality.

Pursuant to the Federal Rules of Civil Procedure, plaintiffs seeking class certification must show that "there are questions of law and facts common to the class." *Fed. R.Civ.P. 23(a)(2)*. Plaintiffs have made such a showing. Several questions of law and fact are common to the class, including: (1) Whether the Securities Act and the Exchange Act—and the SEC rules promulgated thereunder—were violated by the defendants; (2) Whether the Company's public filings and other public statements disseminated to the investing public misrepresented or failed to disclose material facts about Aquila; (3) Whether the defendants made false and misleading statements with scienter, and (4) The extent the members of the class have sustained damages, if any. Accordingly, the Court finds that plaintiffs have satisfied the commonality requirement of Rule 23(a).

### 3. Typicality.

As the Eighth Circuit Court of Appeals has noted:

> Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory. *Donaldson*, 554 F.2d at 831; *see, e.g., DeBoer*, 64 F.3d at 1174–75 (typicality requirement satisfied even though class members held different mortgage instruments but sought same form of relief); *accord Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir.1992) (affirming over typicality objections a class of securities investors who had purchased or sold any one of twenty-one securities during a certain period); *see, generally, 1 Herbert B. Newberg,*

*Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed.1985) (claim typical if it challenges the same unlawful conduct affecting named plaintiff and putative class).

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996). The plaintiffs' claims arise from the same course of conduct or event: plaintiffs allege that defendants disseminated materially misleading information in violation of the securities laws, and the information artificially inflated the market price of Aquila securities, thereby damaging the purchasers of those securities who were relying on the integrity of the market. As such, the Court finds that the plaintiffs' claims are sufficiently similar to meet the typicality requirement of Rule 23(a)(3).

### 4. Adequate Representation.

The fourth requirement of Rule 23(a) provides that the plaintiffs show that the representatives will fairly and adequately protect the interests of the class .... In order to satisfy this requirement, Plaintiffs must show that: 1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge .... Otherwise stated, adequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class.

*Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 614 (D.Minn.2000).

In the instant suit, the named representatives of the proposed class have met their burden of showing that they are not antagonistic to the interests of the class and that plaintiffs' counsel is qualified to conduct the litigation.

### B. Federal Rule of Civil Procedure 23(b)(3).

### 1. Predominance.

■ Common questions of law and fact need only predominate the claims of the pro-

posed class; such claims need not be dispositive of the litigation. *7A Wright, Miller & Kane, Federal Practice and Procedure*, § 1778 at 528–29 ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."). The matters pertinent to these findings are:

(A) the interest of members of the class individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Fed.R.Civ.P. 23(b)(3)(A)–(D).*

■ In sum, "the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *3B Moore's Federal Practice*, P 23.45[2] at 23–306 to 23–307 (2nd ed.1995). The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will predominate. *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693–95 (D.Minn.1995). The core issues of the instant case are the same for each claimant: whether defendants disseminated materially misleading information in violation of the securities laws, and the information artificially inflated the market price of Aquila securities, thereby damaging the purchasers of those securities who were relying on the integrity of the market. Therefore, the Court concludes that these common issues regarding defendants' liability predominate over possible issues affecting only individual members.

### 2. Superiority.

To satisfy the superiority prong of Rule 23(b)(3), plaintiffs also must demonstrate that a class action lawsuit is superior to other available methods for the fair and efficient adjudication of the controversy. *Fed.*

*R.Civ.P. 23(b)(3).* Given the potential size of the class, the nature of the injuries alleged, the fact that the claims center on a particular course of conduct, and the possibility of multiple inconsistent judgments, the Court finds that plaintiffs have met their burden in demonstrating that a class action is appropriate in this matter.

Defendants argue in their response that (1) the class period should end on *November 7, 2001* instead of *December 3, 2001,* and (2) plaintiffs have not moved to certify a class for Count II of the amended complaint, a claim under Section 12(a)(2) of the Securities Act of 1933.[1]

█ Regarding the class period issue, defendants state that on November 7, 2001, UtiliCorp sent a letter to the Aquila board of directors (which was also filed with the SEC on November 7) stating, "Because each of you is affiliated with UtiliCorp, we are not asking that you approve our proposed exchange offer. Rather, the offer will be structured so that it will, in effect, be subject to the approval of your Class A shareholders." Defendants state that this letter constituted notice to the market (and also one of the Carpe plaintiffs' law firms, who filed suit in the Delaware Court of Chancery on November 7, *the same day* the letter was published) that there was no independent audit committee on November 7, 2001. Plaintiffs allege that the company's investors had "no way of knowing of the Board's failures to protect their interests until December 3, 2001" (*see* plaintiff's brief (Doc. No. 83) at pp. 4–5), because "at no point" until then did defendants disclose their failure to appoint an audit committee (*id.* at 4). Defendants state that this assertion is factually wrong, and that after November 7, there was no reasonable basis for the market to rely on the alleged misstatement in the offering documents concerning appointment of an audit committee by July 25, 2001.

Plaintiffs reply that (1) whether a particular statement cured a prior misrepresentation is a factual issue pertaining to the merits of plaintiffs' claims, which is not an issue

appropriate for adjudication on this motion (*see In re Ribozyme Pharmaceuticals, Inc. Sec. Litig.,* 205 F.R.D. 572, 579 (D.Colo. 2001)), and (2) even if adjudicated on this motion, the form and letter filed on November 7, 2001 did not constitute a curative disclosure in that the letter did not mention defendants' failure to form an Audit Committee and otherwise contained only a "vague reference" to the independence of the Aquila board (*see In re Reliance Sec. Litig.,* 135 F.Supp.2d 480, 510 (D.Del.2001) (providing that the effect of the fraudulent statement ends only when full disclosure "discredits the other one so obviously that the risk of real deception drops to nil.")) Defendants' December 3, 2001, disclosure, on the other hand, clearly states that "Although Aquila has undertaken a process for selection of independent directors, it has not yet made any appointments."

The Court agrees with the points and authorities cited by plaintiffs that defendants have not put forth sufficient evidence demonstrating that the November 7, 2001, statement constituted a curative disclosure. Therefore, plaintiff's motion to certify class (Doc. No. 82) is **GRANTED**, and the class period will close on December 3, 2001.

## II. *Plaintiffs' Motion for Leave to File Amended Motion for Class Certification (Doc. No. 94)*

Plaintiffs move to amend the motion for class certification to (1) substitute Michael Dykes as lead plaintiffs and proposed class representative for James Gordon Starr; and (2) add plaintiffs' claims under Section 12 of the Securities Act of 1933.

Plaintiffs state that defendants were not prejudiced by plaintiffs' inadvertent error in omitting the Section 12 claims because the complaint alleged such claims and defendants should reasonably assume that on a motion for class certification Plaintiffs would seek certification of the Class as defined in the complaint.

---

1. The issue regarding Count II of the amended complaint will be dealt with in the Court's order on Plaintiff's Motion for Leave to File Amended

Motion for Class Certification (Doc. No. 94), below.

Regarding substitution of Michael Dykes, plaintiffs state that Dykes' claims are typical of the members of the class, and that his claims involve the same fundamental legal theories and factual scenarios as those of the rest of the class. Plaintiffs also state that Dykes will fairly and adequately protect the interests of the proposed class.

■ Defendants respond that (1) a class under Section 12(a)(2) cannot be certified because neither of the lead plaintiffs have a Section 12 claim against the defendants because neither of them purchased their shares within 25 days of the Aquila IPO; (2) even if a 12(a)(2) class was certified, if would have to be limited to those shareholders who purchased stock within 25 days of the April 24, 2001, Aquila IPO; and (3) as noted in defendants' response to the original class certification briefing, the class period for the non-Section 12 claims cannot extend beyond November 7, 2001.[2]

Defendants state the class should be limited to those who purchased stock within 25 days after the April 24, 2001, IPO. Defendants note that Section 12(a)(2) applies only to purchases made in public offering, not to those made in secondary market transactions. *See Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 571, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Defendants also note that some courts have held that persons who purchased stock in the period shortly after the IPO when by statute a prospectus must also be delivered (*see* 15 U.S.C. § 77d(3)) may also bring a claim under Section 12(a)(2), because transactions during that statutory period are sufficiently analogous to IPOs so as to carry the same duties of disclosure. *See Brosious v. Children's Place Retail Stores,* 189 F.R.D. 138, 143 (D.N.J.1999). Under 17 C.F.R. § 230.174(d), the time period in which a prospectus must be delivered is 25 days after the offering date if (1) the security was not subject to § 13 or § 15(d) of the 1934 Securities Exchange Act; and (2) as of the offering date, the security was listed on a registered national securities exchange or authorized for inclusion in a qualified electronic inter-dealer quotations system. Defendants state they

meet both of these requirements and therefore the class period for any Section 12 claim would have to be limited to the 25–day period of April 24, 2001 through May 19, 2001. For good cause shown, this Court agrees, and finds that the class period for plaintiffs' Section 12 claims shall be from April 24, 2001 through May 19, 2001.

Defendants' second argument is that neither of the proposed class representatives has standing to bring a Section 12 claim. Defendants state that Michael Dykes first purchased Aquila stock on May 25, 2001, and Local 144 Nursing Home Pension Fund first purchased Aquila stock on May 31, 2001. Both are outside the 25–day period mentioned above. Therefore, because neither plaintiff has standing to pursue a claim under Section 12, defendants state that neither can be considered an adequate representative of a Section 12 class and therefore no such class can be certified. *See Great Rivers Coop. of Southeastern Iowa v. Farmland Indus. Inc.,* 120 F.3d 893, 899 (8th Cir.1997)("Inherent in Rule 23 is the requirement that the class representatives be members of the class.").

■ Plaintiffs reply that defendants' standing argument is actually grounded in the *typicality* requirement of Rule 23(a)(3). *See In re Dreyfus Aggressive Growth Mutual Fund Litig.,* 98 Civ. 4318, 2000 WL 1357509, at *3, 2000 U.S. Dist. Lexis 13469, at *8 (S.D.N.Y. Sept. 19, 2000) (stating "The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability .... Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities." *Id.,* 2000 WL 1357509 at *3, 2000 U.S. Dist. Lexis 13469, at *8–9). Plaintiffs also point to a case directly on point decided in the Southern District of New York, which held:

> The Section 12(a)(2) claim arises from the same course of conduct and the same Offerings, and involves the same defendants, legal theories and factual allegations that

2. Because this issue has already been addressed in conjunction with the Court's examination of plaintiffs' original motion for class certification, the Court does not address this issue here.

give rise to and inform the Section 11 claims. Those similarities are sufficient to satisfy the Rule 23(a) requirements, whether characterized as concerns about the adequacy of representation or the typicality of the claims.

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y.2003). This Court agrees with the reasoning set forth in the *WorldCom* case, and therefore finds that the proposed class representatives in the present case meet the adequacy and typicality requirements of Rule 23(a). Therefore, plaintiffs' Motion for Leave to File Amended Motion for Class Certification (Doc. No. 94) is **GRANTED**, with a class period ending **May 19, 2001** for plaintiffs' Section 12 claims and **December 3, 2001** for all other claims stated in plaintiffs' amended complaint.

**IT IS SO ORDERED.**