Kevin DALE, individually and on behalf of all others similarly situated, Respondent,

v.

DAIMLERCHRYSLER CORPORATION, Appellant.

No. WD 65288.

Missouri Court of Appeals, Western District.

June 30, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2006.

Application for Transfer Denied Nov. 21, 2006.

Edward D. Robertson, Jr., Mary D. Winter, and Anthony DeWitt, Jefferson City, MO, Gary Tatlow and Christian B. Faiella, Moberly, MO, Vincent L. DiTommaso, Oakbrook Terrace, IL, for respondent.

Ann K. Covington, Peter W. Herzog III, Kathy A. Wisniewski and John W. Rogers, St. Louis, MO, for appellant.

Before EDWIN H. SMITH, C.J., and ELLIS and NEWTON, JJ.

EDWIN H. SMITH, Chief Judge.

Pursuant to Rule 52.08(f)[1] and § 512.020(3),[2] DaimlerChrysler Corporation appeals from the order of the Circuit Court of Boone County, Missouri, certifying two classes with respect to Counts II and III of the putative class action petition filed by the respondent, Kevin Dale, against the appellant for damages allegedly caused by defective power window regulators on certain Dodge Durangos. Count II, certified pursuant to Rule 52.08, was for a breach of an implied warranty of merchantability, brought pursuant to the Magnuson–Moss Warranty Act (MMWA), while Count III, certified pursuant to Rule 52.08 and § 407.025, was for deceptive and unfair practices, brought pursuant to the Missouri Merchandising Practices Act (MMPA).[3]

The appellant raises six points on appeal. In Points I and VI, it challenges the sufficiency of the record to support the trial court's findings required, by Rule 52.08(b)(3), to maintain a class action lawsuit. In Point I, it claims that the record does not support the trial court's finding, required by Rule 52.08(b)(3), that: "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." In Point VI, it claims that the record does not support the trial court's finding required, by Rule 52.08(b)(3), that: "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In Point II, it claims that the trial court erred in certifying Counts II and III for class action because the class definitions impermissibly incorporate findings as to "merit issues." In Points III, IV, and V, it challenges the sufficiency of the record to support the trial court's findings required for class action certification as to three of the four Rule 52.08(a) "prerequisites to a class action." In that regard, Rule 52.08(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if" four enumerated prerequisites are satisfied. Point III deals with the prerequisite of Rule 52.08(a)(1), that "the class is so numerous that joinder of all members is impracticable." Point IV deals with the prerequisite of Rule 52.08(a)(3), that "the claims or defenses of the representative parties are

1. All rule references are to Missouri Rules of Civil Procedure, 2006, unless otherwise indicated.

2. All statutory references are to RSMo, 2000, unless otherwise indicated.

3. Because Rule 52.08 and § 407.025 are identical as to their requirements for class certification, unless otherwise indicated, when referring to the requirements of Rule 52.08 as to Count III, we will also be referring to the requirements of § 407.025.

typical of the claims or defenses of the class." Point V deals with the prerequisite of Rule 52.08(a)(4), that "the representative parties will fairly and adequately protect the interests of the class."[4]

We affirm.

## Facts

The Dodge Durango was introduced by the appellant as a new model for the 1998 model year, with the first Durangos being sold in September of 1997. On December 3, 1997, the respondent purchased a new 1998 Dodge Durango from Dodge City Motors in Columbia, Missouri. The respondent's Durango came with a written warranty of three years or 36,000 miles. Beginning in 1998, and continuing through 2000, the respondent had problems operating the electric power windows of his Durango. During this two-year period, on eight separate occasions, the respondent presented his Durango to Moberly Motors Company, an authorized DCC dealer, for problems with his electric window power system. Although, Moberly Motors Company performed various repairs on the respondent's Durango, it did not install a Bosch motor in his vehicle. The main component of the electric power window system is the power window regulator. When activated by the power window switch, the power window regulator causes the window to go up and down. The regulator is made up of three parts: a motor, a lift plate, and a cable.

On October 10, 2000, the respondent filed suit against the appellant in the Circuit Court of Boone County. In Count I, he alleged a breach of the express warranty on his Dodge Durango, alleging that the warranty was breached when the appellant failed to repair the defective power windows of his Durango by installing a Bosch

motor power window regulator. In Count II, he alleged a violation of the MMWA, alleging that the "actions of DaimlerChrysler in failing to tender the Dodge Durango vehicle to Dale free of defects and refusing and failing to repair or replace the defective Dodge Durango tendered to Dale ... constitute[d] a breach of the written express warranties covering the vehicle and violate[d] the Warranty Act." In Count III, he alleged a breach of the MMPA, alleging that the conduct of the appellant in "failing to install Bosch Window Regulators in its Durangos constitutes the use or employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of Dodge Durango vehicles to Dale ... constitut[ed] violation of the [Act]."

On February 21, 2001, the respondent filed a motion for class certification of all three counts. On October 21, 2004, he amended his motion, requesting class certification for Counts II and III only. The respondent's motion was taken up and heard on March 10, 2005. On March 15, 2005, the trial court certified two classes, one as to Count II and one as to Count III. With respect to Count II for breach of an implied warranty of merchantability, brought pursuant to the MMWA, the court certified a class of:

1. all individuals who purchased a new Dodge Durango in the State of Missouri

2. within the four years prior to the filing of the complaint on 10–10–00

3. who have returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators

---

4. The fourth prerequisite, which is not challenged by the appellant, is found in Rule 52.08(a)(2), that "there are questions of law or fact common to the class."

4. who have not received Bosch motor window regulators and

5. who still own their Dodge Durango.

With respect to Count III for deceptive and unfair practices, brought pursuant to the MMPA, the court certified a class of:

1. all individuals who purchased a new Dodge Durango

2. within the five years prior to the filing of the complaint on 10–10–00

3. who have returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators

4. who have not received Bosch motor window regulators and

5. who still own their Dodge Durango.

On May 25, 2005, the appellant petitioned this Court, pursuant to Rule 52.08(f) and § 512.020(3), for permission to appeal the trial court's order certifying the two classes. On June 30, 2005, this court sustained the appellant's petition and stayed all trial court proceedings, pending resolution of this appeal.

### Standard of Review

In determining our standard of review, a brief discussion of the interplay between Rule 52.08, § 407.025, and Federal Rule 23 is in order.

As to Count II of the respondent's petition for a breach of an implied warranty of merchantability, brought pursuant to the MMWA, the respondent sought and was granted class certification pursuant to Rule 52.08. As to Count III of the respondent's petition for deceptive and unfair practices, brought pursuant to the MMPA, the respondent sought and was granted class certification pursuant to Rule 52.08 and § 407.025, which statute governs class actions under the MMPA. Section 407.025.3 provides, in pertinent part, that "[a]n action may be maintained as a class action in a manner consistent with Rule 23 of the Federal Rules of Civil Procedure and Missouri rule of civil procedure 52.08 to the extent such state rule is not inconsistent with the federal rule." Rule 23 and Rule 52.08 are essentially identical. As such, it is well settled that federal interpretations of Rule 23 are relevant in interpreting Rule 52.08. *Craft v. Philip Morris Companies,* 190 S.W.3d 368, 376 (Mo.App. 2005); *Ralph v. Am. Family Mut. Ins. Co.,* 809 S.W.2d 173, 174 (Mo.App.1991). Likewise, inasmuch as § 407.025 is essentially identical to Rule 23 and Rule 52.08 and class actions under § 407.025 are, by its express terms, to be maintained consistent therewith, logically, we can also rely on federal interpretations of Rule 23 in interpreting § 407.025. Hence, cases interpreting Rule 23, Rule 52.08, and § 407.025 are essentially interchangeable. And, given this interchangeability between Rule 52.08 and § 407.025, when discussing the issues raised in this case with respect to the class certification of Count III, brought under the MMPA, invoking both Rule 52.08 and § 407.025, any references to Rule 52.08, unless otherwise indicated, will be deemed to also refer to § 407.025.

With respect to our standard of review of the trial court's order granting the respondent's motion for class action certification, the appellant recognizes that the Missouri Supreme Court has held that our review is for an abuse of discretion. *See State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2004). However, it contends that pursuant to federal interpretations of Rule 23, where, as here, the trial court's order of class certification is not supported by findings of fact, it is not entitled to the "traditional deference" given such determinations, citing *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1161 (9th Cir.2001), and *Vizena v. Union*

*Pacific Railroad Co.,* 360 F.3d 496, 503 (5th Cir.2004). The appellant further contends that this standard is mandatory as to the trial court's class action certification of the appellant's MMPA count, Count III, because the language of § 407.025 states that any differences between Rule 23 and Rule 52.08 are controlled by Rule 23. The appellant is contending, in effect, that there are two distinct levels of review with respect to a trial court's class action certification, depending on whether the court has made findings of fact supporting its certification decision. It is contending that if findings are made, then the "traditional deference" is to be paid the trial court, but if they are not, then a "less deferential standard" is to be used. The cases cited by the appellant do not stand for that proposition.

In *Local Joint Executive Board,* the court held:

> If the trial judge has made findings as to the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion. However, when a district court's decision is not supported by findings as to the applicability of Rule 23 criteria, it is not entitled to the traditional deference given to such a determination.

244 F.3d at 1161 (citations omitted). There, the court found that while the district court had made findings as to the provisions of Rule 23, it had failed to make findings as to their application to the case such that the court "[did] not have the facts necessary to warrant the deference [it] normally accord[ed] to the district court's class determinations." *Id.* While at first blush this language, standing alone, would lend some support to the appellant's argument as to our standard of review, when read in context, it is clear that the two-level standard of review suggested by the appellant has no merit.

Having determined that the district court's decision lacked the requisite factual findings for its review, the court in *Local Joint Executive Board* stated:

> However, we believe that the factual record is sufficiently well developed that we may evaluate for ourselves whether the provisions of Rule 23 have been satisfied, and that we therefore do not need to remand for a determination of class action status.

*Id.* This language clearly demonstrates that there are *not* two levels of deference to be paid to the trial court on appeal, as the appellant suggests, depending on whether it did or did not make findings with respect to the provisions of Rule 23 and findings of fact as to how they applied in the case. Rather, it makes it clear that in the absence of specific findings supporting the trial court's class action certification, the cause has to be remanded to the court for that purpose, unless the basis for the court's certification is apparent from the record, enabling the appellate court to conduct meaningful appellate review.

In *Vizena,* the court addressed the same issue addressed in *Local Joint Executive Board,* the effect on its review of a lack of findings by the trial court as to compliance with the provisions of Rule 23, supporting the court's class certification. 360 F.3d at 503. There, the court held: "When because of absence of findings of fact or conclusions of law, an appellate court cannot determine whether the record supports the trial court decision, it should remand the action for entry of findings of facts and conclusions of law." *Id.* (citations omitted). This drives a nail in the coffin of the appellant's assertion that there is a two-tier level of deference paid to the trial court in reviewing class action certifications, pursuant to Rule 52.08, de-

pending on whether there are findings of fact supporting the court's certification.

What is clear from the cases cited by the appellant is that the federal courts have required findings of fact and conclusions of law in class certification cases under Rule 23 to insure meaningful appellate review of the certification. However, it is also clear from the cases that the federal courts have recognized that it is not necessary to remand for findings and conclusions in every instance of an absence of such, but only where the appellate court in those cases cannot readily determine from the record the basis on which the trial court granted class certification, in compliance with Rule 23. Thus, there is not a two-tier standard of review, as contended by the appellant. Rather, the rule is that in the absence of findings and conclusions as to the satisfaction of the requirements of Rule 23, the cause will be remanded for such findings and conclusions, unless it is apparent from the record the basis on which class certification was granted. Applying that standard here, we find that although the trial court did not make findings and conclusions as to its certification, under Rule 52.08 and § 407.025, the record here is sufficient to allow us to conduct a meaningful review of the court's class certifications. However, as we discuss, *infra*, we do not accept the fact that class action certifications by our state courts, pursuant to Rule 52.08 and § 407.025, require findings of fact and conclusions of law.

 Unlike in our federal courts, in our state courts, with respect to class action certifications, pursuant to Rule 52.08 or § 407.025, we cannot find any requirement, by virtue of rule, statute or case law, that the trial court make findings of fact and conclusions of law supporting its certification. Thus, in the absence of a request for findings of fact and conclusions of law, pursuant to Rule 73.01(c), the trial court is not required to make findings or conclusions in support of its class certification, pursuant to Rule 52.08 or § 407.025. *In re Marriage of Colley*, 984 S.W.2d 163, 171 (Mo.App.1998) (holding that in the absence of a request for findings of fact and conclusions of law, pursuant to Rule 73.01(c), none are required). While § 407.025 does provide that a class action, with respect to a MMPA claim, is to be maintained in a manner consistent with Rule 23, that provision, giving the language used in § 407.025 its plain and ordinary meaning to determine legislative intent, *see State ex rel. Nixon v. Overmyer*, 189 S.W.3d 711, 715 (Mo.App.2006) (holding that we are to interpret statutes to determine legislative intent by giving the language used its plain and ordinary meaning), only applies to the manner of maintaining the action, not appellate procedure, including the proper standard for appellate review of such certifications.

Having determined that the appellant's assertion of a two-tier standard of review, based on whether the trial court made findings of fact and conclusions of law, is incorrect, we now turn to the correct standard of review of class action certifications under Rule 52.08.

 As stated, *supra*, the determination of whether to certify a class action, under Rule 52.08, "*ultimately* rests within the sound discretion of the trial court." *Union Planters Bank, N.A.*, 142 S.W.3d at 735 (quoting *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 486 (Mo. *banc* 2003)) (emphasis added). However, the trial court's certification, under Rule 52.08, must be supported by the record. *Beatty v. Metro. St. Louis Sewer Dist.*, 914 S.W.2d 791, 795 (Mo. *banc* 1995). Hence, "[i]f the record does not demonstrate that the requisites for class action have been met, the trial court has abused its discretion." *Harvell v. Goodyear Tire*

*& Rubber Co.,* — P.3d ——, No. 102,128, 2006 WL 1073067 at *2 (Okla. Apr.25, 2006). An abuse of discretion, in certifying a class, "occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in [the] evidence for the ruling." *Id.*

A court abuses its discretion only if its ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. It cannot be said that the trial court abused its discretion where reasonable persons could differ with the propriety of its ruling.

*Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 410 (Mo.App.2000) (internal quotation marks omitted).

 Inasmuch as Rule 52.08(c)(1) provides for de-certification of a class "before [a] decision on the merits," we will err on the side of upholding certification in cases where it is a close question. *See Beck v. City of Rapid City,* 650 N.W.2d 520, 525 (S.D.2002) (since decertification is always possible, the court should give the benefit of the doubt to approving the class). Likewise, "[b]ecause class certification is subject to later modification, a court should err in favor of, and not against, allowing maintenance of the class action." *Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 602 (D.Colo.1990).

### Discussion

 Rule 52.08 provides "a mechanism for the certification and conduct of class action lawsuits." *Beatty,* 914 S.W.2d at 794. As noted, *supra,* MMPA class actions, such as the one alleged by the respondent in Count III of his petition, are also governed by § 407.025, which, as we noted, *supra,* is identical, as to its requirements for class certification, and refers to Rule 52.08 and Federal Rule 23 as being controlling. "A class action is designed to promote judicial economy by permitting the litigation of the common questions of law and fact of numerous individuals in a single proceeding." *Union Planters Bank, N.A.,* 142 S.W.3d at 735. As noted by the Missouri Supreme Court in *Beatty:*

The purpose of class action procedure is to facilitate litigation when the number of persons having interest in a lawsuit is so great that it is impractical to join them all as parties. In many cases this allows the accumulation of many relatively small but meritorious claims into a single suit that would otherwise not be pursued.

914 S.W.2d at 794 (citations omitted).

 While the procedural utility of class actions is well recognized, it is also well recognized that by their very nature, they are a procedural exception to the general principle of jurisprudence that "one is not bound by a judgment in personam entered in litigation to which he was not designated as a party or made a party by service of process or entry of appearance." *Id.* Members of a class, who did not initiate the lawsuit, have little or no control over the case, but are still bound by its result. *Id.* Hence, the requirements of Rule 52.08 have been carefully drafted to take into consideration that fact and to insure due process, and consequently, are not merely technical or directory, but are mandatory. *Id.* at 795.

 Before the trial court can certify a case for class action, pursuant to Rule 52.08, all the requirements of the rule must be satisfied. *Koger,* 28 S.W.3d at 410. As to these requirements, the party seeking class certification has the burden of proof. *Craft,* 190 S.W.3d at 379. This burden is satisfied if there is evidence in the record, which if taken as true, would

satisfy each and every requirement of the rule. *Beatty*, 914 S.W.2d at 795.

Rule 52.08 reads, in pertinent part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If the four prerequisites of Rule 52.08(a) are satisfied, a class action still cannot be maintained, unless, in addition, the trial court finds that one of the three options of Rule 52.08(b) applies. *Craft*, 190 S.W.3d at 379. Here, the trial court found that certification, as to both Counts II and III, was appropriate pursuant to the third option of Rule 52.08(b), which reads:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Rule 52.08(b)(3).

In Points III, IV, and V, the appellant challenges the sufficiency of the record to support the trial court's findings for class action certification as to three of the four Rule 52.08(a) "prerequisites to a class action." Point III deals with the prerequisite of Rule 52.08(a)(1), that "the class is so numerous that joinder of all members is impracticable." Point IV deals with the prerequisite of Rule 52.08(a)(3), that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Point V deals with the prerequisite of Rule 52.08(a)(4), that "the representative parties will fairly and adequately protect the interests of the class." The trial court's findings, with respect to Rule 52.08(b)(3), are challenged in Points I and VI. In Point I, the appellant challenges the trial court's requisite finding with respect to whether the common questions to the class predominated. In Point VI, it challenges the trial court's requisite finding with respect to whether a class action was superior for purposes of adjudication.

The appellant's Point I has four subpoints, all purportedly dealing with the issue of "common-question predominance." However, the first subpoint does not. In the first subpoint, the appellant claims that the trial court's finding supporting class certification, as to common-question predominance, was not supported by the record in that determining the members of the defined classes would require prohibited "individualized fact-finding." As we discuss, *infra*, this issue is more logically

grouped with the issue raised by the appellant in its Point II, regarding the required definiteness of the class definitions.

In Point II, the appellant claims that the trial court erred in granting the respondent's motion for class action certification of Counts II and III of his petition because the class definitions impermissibly incorporate findings as to "merit issues." Specifically, the appellant claims they incorporate the merit decisions that "all window regulator failures are the same, and that the only fix for *every* failed window regulator—regardless of its cause—is installation of a Bosch motor." While the appellant cites one case, *Sample v. Monsanto Co.*, 218 F.R.D. 644, 647 (E.D.Mo.2003), for the general proposition that it is impermissible for class definitions to include merit determinations, it does not state the rationale for this prohibition. However, our research reveals that implicit in Rule 23 of the Federal Rules of Civil Procedure, which is identical to our Rule 52.08, such that cases interpreting Rule 23 are persuasive in interpreting Rule 52.08, *Craft*, 190 S.W.3d at 376; *Ralph*, 809 S.W.2d at 174, is the fact that class definitions must be based on definite and objective criteria, but must not include merit determinations. This prohibition is to insure that the class is readily ascertainable, prior to trial, without the need of conducting individualized hearings or "mini-hearings" to determine who is a member of the class, which is "incongruous with the efficiencies expected in a class action" and effectively "renders a class action inappropriate for addressing the claims at issue." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D.Pa. 2000). Hence, the first subpoint of the appellant's Point I, regarding the definiteness of the class definitions to determine who are in the classes, is better discussed in Point II, which also addresses the definitions.

Given the procedural chronology of Rule 52.08 for class certification, we deem it more logical to address the appellant's points in the following order: III, IV, V, I, II and VI.

### I. Numerosity Prerequisite [Rule 52.08(a)(1)]

In Point III, the appellant claims that the trial court erred in granting the respondent's motion for class action certification, as to Counts II and III, because its required "numerosity" finding for class action certification, under Rule 52.08(a)(1), that "the class is so numerous that joinder of all members is impracticable," is not supported by the record. Specifically, the appellant claims that the trial court's finding, as to the first prerequisite of Rule 52.08(a)(1), is not supported by the record in that the "record is devoid of any evidence demonstrating that any individual other than [the respondent] is a member of the class as defined by the court." As noted in the facts, *supra*, with respect to Count II for breach of an implied warranty of merchantability, brought pursuant to the MMWA, the court certified a class of:

1. all individuals who purchased a new Dodge Durango in the State of Missouri

2. within the four years prior to the filing of the complaint on 10–10–00

3. who have returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators

4. who have not received Bosch motor window regulators and

5. who still own their Dodge Durango.

And, with respect to Count III for deceptive and unfair practices, brought pursuant to the MMPA, the court certified a class of:

1. all individuals who purchased a new Dodge Durango

2. within the five years prior to the filing of the complaint on 10–10–00

3. who have returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators

4. who have not received Bosch motor window regulators and

5. who still own their Dodge Durango.

The appellant claims that, applying these definitions, there is nothing in the record to support the fact that the members of these defined classes would be so numerous that it would be impracticable to join all of them in one lawsuit. We disagree.

In support of the appellant's claim in this point, it cites numerous federal decisions that hold that the numerosity prerequisite cannot be satisfied by mere speculation and conclusory allegations as to the sizes of the classes. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989); *Makuc v. Am. Honda Motor Co., Inc.,* 835 F.2d 389, 394 (1st Cir.1987); *Lengle v. Attorneys' Title Guar. Fund, Inc.,* No. 01 C 7739, 2002 WL 31163672, at *4 (N.D.Ill. Sept.27, 2002); *Sanna v. Delta Airlines,* 132 F.R.D. 47, 50 (N.D.Ohio 1990); *Smith v. Flagship Int'l,* 609 F.Supp. 58, 60 (N.D.Tex.1985). While we would agree with that general proposition, we disagree that the record here is not sufficient for the trial court to find that the numerosity prerequisite was satisfied.

 Rule 52.08(a) does not require that joinder of all the members of a class be impossible, only that it be impracticable. *Ardrey v. Fed. Kemper Ins. Co.,* 142 F.R.D. 105, 109 (E.D.Pa.1992). Joinder of all members is "impracticable" for purposes of the rule when it would be inefficient, costly, time-consuming and probably confusing. *Id.* In making this determination, the courts have not developed arbitrary or rigid rules to define the required size of a class; instead, the determination must be made on a case-by-case basis.

*Lewy 1990 Trust v. Inv. Advisors, Inc.,* 650 N.W.2d 445, 452 (Minn.Ct.App.2002). A plaintiff does not have to specify an exact number of class members to satisfy the numerosity prerequisite for class certification, but must show only that joinder is impracticable through some evidence or *reasonable, good faith estimate* of the number of purported class members. *Linquist v. Bowen,* 633 F.Supp. 846, 858 (W.D.Mo.1986). To support a finding of the numerosity prerequisite of Rule 52.08(a)(1), the trial court can accept "common sense assumptions." *Snider v. Upjohn Co.,* 115 F.R.D. 536, 539 (E.D.Pa. 1987). As a general rule, an evidentiary hearing is not required to determine if a class action is maintainable. *Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119, 133 (Mo. *banc* 1979); *Byrd v. Chadwick,* 956 S.W.2d 369, 380 (Mo.App.1997). In its discretion, the trial court may resolve the issue based on briefs and affidavits, and other evidence. *Id.*

In his amended motion for certification, the respondent alleged, as to the numerosity prerequisite, that: "[m]any thousand of Dodge Durangos were manufactured in 1998 that were subject to faulty electrical windows. The problem also persisted in 1999 model year Durangos. The precise number of vehicles subject to the defects complained of in the Class Action Petition is known only to DaimlerChrysler." These general conclusory allegations would not be sufficient to satisfy the numerosity prerequisite of Rule 52.08(a)(1), with respect to the class definitions approved by the trial court. However, the evidence presented at the certification hearing, along with the other evidence recognized as sufficient to determine if a class action was maintainable, was sufficient for the trial court to find that the numerosity prerequisite was satisfied.

Documents of the appellant, produced during discovery, show that: (1) in the initial two months of production of the 1998 Durango, almost 100% of the 13,000 units produced experienced power window failures; (2) by the end of May, 1998, approximately 1600 warranty claims had been made for power window regulator failures; (3) as of September 1998, all Dodge truck dealers had been warned by the appellant that the power window regulators on about 7,000 1998 Durangos might fail; and, (4) in dealer service instructions concerning 1998 Durangos built through October 28, 1997, dealers were advised that in the case of power window regulator failures, all four power window regulator assemblies had to be replaced. The record also shows that the regulators in the 1998 models used Denso motors, rather than Bosch motors. From this, it is reasonable to assume, that there are thousands of individuals who purchased new Dodge Durangos, within the five years prior to October 10, 2000, and that of this number, there are hundreds and maybe even thousands who returned for repair service for failed power windows and did not receive Bosch motor power window regulators. It is also reasonable to assume, that hundreds and maybe even thousands of those individuals, still own their Durangos.

Class certifications have been upheld where the class is composed of 100 or even less. *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3rd Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) (92 class members sufficient to meet numerosity requirement); *Zeffiro v. First Penn. Banking & Trust Co.*, 96 F.R.D. 567, 569 (E.D.Pa.1983) (51 class members sufficient); *Phila. Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968) (25 class members sufficient); *Kulins v. Malco*, 121 Ill.App.3d 520, 76 Ill.Dec. 903, 459 N.E.2d 1038, 1046 (1984) (19 class members sufficient); *Rior-*

*dan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986) (29 class members sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D.Ill.1992) (72 class members sufficient); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Assn.*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient). Hence, the record, here, would support the trial court's requisite finding for class certification, that the members of the classes, as defined by the trial court, were so numerous that their joinder would be impracticable, such that the court, on that basis, did not abuse its discretion in certifying the classes.

Point denied.

## II. Typicality Prerequisite [Rule 52.08(a)(3)]

In Point IV, the appellant claims that the trial court erred in granting the respondent's motion for class action certification, as to Counts II and III, because its required "typicality" finding for class action certification, under Rule 52.08(a)(3), that: "the claims or defenses of the representative parties are typical of the claims or defenses of the class," is not supported by the record. Specifically, the appellant claims that the trial court's finding, as to the typicality prerequisite of Rule 52.08(a)(3) is not supported by the record in that the underlying facts supporting the respondent's claims are unlike those supporting the claims of other class members and "there are defenses that are unique to [respondent's] claims."

In its brief, the appellant cites *Koger v. Hartford Life Insurance Co.*, 28 S.W.3d 405, 410 (Mo.App.2000), for the general proposition, that to satisfy the typicality prerequisite of Rule 52.08(a)(3), the plaintiff: "must be part of the class and possess the same interest and suffer the same

injury as the class members." To further explain the typicality prerequisite, the appellant quotes in its brief from *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998): "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class"; and from *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 77 (D.N.J.1993): "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." From this, the appellant appears to be contending that if there is any variance in the underlying facts of the plaintiff's claim from those of the putative class members' claims, the plaintiff's claim is not typical of the claims of the putative class such that the typicality prerequisite for class certification is not satisfied. That is not the law.

The burden of satisfying the typicality prerequisite:

is fairly easily met so long as other class members have claims similar to the named plaintiff. Factual variations in the individual claims will not normally preclude class certification if the *claim arises from the same event or course of conduct as the class claims,* and gives rise to the same legal or remedial theory.

*Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 457 (W.D.Mo.2004) (internal citations and quotation marks omitted) (emphasis added); *see also, Liberty Lincoln Mercury, Inc.,* 149 F.R.D. at 77. In qualifying its assertion, that "[f]actual variations in the individual claims will not ... preclude class certification," with the term "normally," the *Carpe* court was clearly suggesting that at some level, factual variations could be fatal to the typicality prerequisite. 224

F.R.D. at 457. In that regard, although the court in *Liberty Lincoln Mercury* did state: "[i]f proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims," it also stated:

The typicality requirement ... is designed to screen out class actions involving legal or factual positions of the representative class which are markedly different from those of other class members. Thus, the typicality requirement will not be met when: [t]he named plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.

149 F.R.D. at 77 (internal citations and quotations omitted). What *Carpe* and *Liberty Lincoln Mercury* teach us is that the typicality prerequisite for class certification, pursuant to Federal Rule 23 and Missouri Rule 52.08, is satisfied, even when there is a variance in the underlying facts of the representative's claim and the putative class members' claims, as long as the claim arises from the same event or course of conduct of the defendant as the class claims, the underlying facts are not markedly different, and the conduct and facts give rise to the same legal or remedial theory.

In claiming that the underlying facts of the respondent's claims against the appellant are unique, resulting in his claims being atypical as to the claims of the putative class members, the appellant contends that: (1) the respondent's "Durango was one of a relatively small subset of vehicles manufactured with a design flaw in the electric window system that caused window regulator failure" and "there was no evidence before the trial court that any other vehicle having this

design flaw is still owned by its original purchaser"; (2) the respondent "had only one of the [10 distinct power window regulators] installed in his vehicle, while members of the certified class likely had others" such that it is unlikely that "any other vehicle that had this design flaw is still owned by its original purchaser"; and, (3) "there are potential defenses to [respondent's] claims that may be unique to him," *i.e.*, that mistakes were made "during the repair of the [respondent's] power window system which likely caused or exacerbated the problems [respondent] experienced." The appellant's contentions are without merit.

As support for its contention that the respondent's "Durango was one of a relatively small subset of vehicles manufactured with a design flaw in the electric window system that caused window regulator failure," the appellant cites to the affidavit of Trevor M. Cole, a mechanical engineer employed by the appellant, who in 1999 began working on window regulator systems for Durangos. He testified concerning a lift plate design problem that was causing power window failures in the 1997 and 1998 Durangos. The problem was fixed by modifying the "ferrule housing of the power window regulator's lift plate." The appellant concedes in its brief that this particular design flaw was found in the respondent's Durgano and "remedied." Hence, this is no longer an issue as to the respondent's claims against the appellant in Counts II or III of his putative class action petition. Rather, the respondent is asserting defects with respect to other aspects of the power window regulator that can be remedied only by the installation of a Bosch motor. As such, the appellant's contention, regarding the "uniqueness" of the underlying facts of the respondent's claims, cannot find any support from the fact that there was a defect in the design of the lift plate in the power

window regulator of the respondent's Durango, which has admittedly been remedied.

The appellant also contends that the underlying facts of the respondent's claims against the appellant were sufficiently unique to make those claims atypical of the putative classes certified by the trial court in that there were ten distinct power window regulators installed in 1998—2000 in Durangos such that it was "unlikely that any other vehicle had [the same] design flaw" as the respondent that was still owned by the original purchaser. The appellant again relies on the affidavit of Cole, who testified, in pertinent part, that for the period of 1998 through 2000, there "were at least 13 design changes to the motors in the Durango's power window regulators, which resulted in 10 distinct iterations of the power window regulators installed in newly-manufactured Durango vehicles." He testified that the last change resulted in all Durangos, manufactured after April 2000, having power window regulators with Bosch motors.

The appellant's contention that it was "unlikely that any other vehicle had [the same] design flaw as the respondent," which was still owned by the original purchaser, based on there being ten distinct iterations of the power window regulators in Durangos during 1998 through 2000, is pure speculation. Speculation or not, the appellant's contention is still not persuasive on the issue of typicality.

As noted, *supra*, the typicality prerequisite for class certification is satisfied, even when there is a variance in the underlying facts of the representative's claim and the putative class members' claims, as long as the claim arises from the same event or course of conduct of the defendant as the class claims, the underlying facts are not markedly different, and the conduct and

facts give rise to the same legal or remedial theory. Here, the respondent asserts in Count II of his petition a claim under the MMWA and in Count III a claim under the MMPA.

In Count II, the respondent asserts a breach of an express written warranty,[5] alleging that his Durango contained a "defective item," requiring repair, in that the power windows failed to function properly and the appellant failed and refused to repair them. Specifically, the respondent was claiming that his Durango's power windows failed due to defective power window regulators, requiring the installation of new regulators with Bosch motors. Given the definition of the class for Count II, a person is a member of the class if he (1) purchased a new Dodge Durango in the State of Missouri, (2) within four years of the filing of the complaint on 10–10–00, (3) who had returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators, (4) who have not received Bosch Window Regulators and (5) who still own the Dodge Durango, the respondent's claim, under Count II, and the claims of the putative members would be based on the same conduct of the appellant and would give rise to the same legal theory, a violation of the MMWA, based on a breach of the express written warranty on the respondent's Durango, regardless of which of the ten designs of the power window regulators each Durango had. And, while there might be some variance in the exact factual detail of the failure of the power window regulators, depending on the design, such a variance would hardly be considered a marked variance sufficient to defeat the typicality prerequisite for class certification as to Count II.

In Count III, the respondent's MMPA claim, he alleged that, based on the same conduct alleged in support of his MMWA claim in Count II, the appellant engaged in deceptive business practices, in violation of § 407.025. Given the definition of the class for Count III, a person is a member of the class if he (1) purchased a new Dodge Durango, (2) within five years of the filing of the complaint on 10–10–00, (3) who had returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators, (4) who have not received Bosch Window Regulators and (5) who still own the Dodge Durango, it is clear that the respondent's MMPA claim against the appellant is based on the same conduct of the appellant giving rise to the same legal theory as the putative class members, regardless of which design of the power window regulator motor is involved. And, again, while there might be some variance in the exact factual detail of each failure of a power window regulator, depending on the design, such a variance would hardly be considered a marked variance sufficient to defeat the typicality prerequisite for class certification as to Count III.

The appellant further contends that "there are potential defenses to [respondent's] claims that may be unique to him," such that his claims against the appellant, under Counts II and III, are not typical of the putative class members as to those counts. Specifically, the appellant claims that a third party, respondent's father, made errors during the repair of his power window system and, thus, a third party may be liable for the respondent's damages.

██ The appellant's unique-defense contention has nothing to do with the typi-

---

5. The MMWA "calls for the application of state written and implied warranty law." *Hines v. Mercedes–Benz USA, LLC*, 358 F.Supp.2d 1222, 1234 (N.D.Ga.2005). The Act relates to the damages and attorneys' fees that are recoverable under state warranty law and does not create additional federal law as to liability. *Id.* at 1234–35.

cality standard, enumerated, *supra:* the typicality prerequisite for class certification is satisfied, even when there is a variance in the underlying facts of the representative's claim and the putative class members' claims, as long as the claim arises from the same event or course of conduct of the defendant as the class claims, the underlying facts are not markedly different, and the conduct and facts give rise to the same legal or remedial theory. The appellant's unique-defense contention focuses on the conduct of third persons, not the conduct of the appellant, as to either Count II or III, and has nothing to do with the theories on which those counts are brought. The existence of an affirmative defense against a class representative does not make his claim atypical. *Rupp v. Thompson,* No. C5–030–347, 2004 WL 3563775 *6 (D.Minn. Mar. 17, 2004); *Rishcoff v. Commodity Fluctuations Sys. Inc.,* 111 F.R.D. 381, 382 (E.D.Pa.1986). Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case as to liability for the named class representative's case. *Rishcoff,* 111 F.R.D. at 382. This view is supported by the proposition that the class representative need not show a probability of individual success on the merits. *Rupp,* 2004 WL 3563775, at *6.

While the appellant may be correct that there are affirmative defenses unique to the respondent's claims in Counts II and III, this professed "uniqueness" is irrelevant in determining whether the typicality prerequisite for class certification is satisfied. The mere fact that the respondent may not ultimately recover on Count II or Count III, depending on the various defenses that may be asserted, is irrelevant to whether his claim is typical of the claims of the class members.

Point denied.

### III. Adequacy Prerequisite [Rule 52.08(a)(4)]

In Point V, the appellant claims that the trial court erred in certifying Counts II and III of the respondent's putative class action petition because its required adequacy finding for class action certification, under Rule 52.08(a)(4), that: "the representative parties will fairly and adequately protect the interests of the class," is not supported by the record. Specifically, the appellant claims that the trial court's finding, as to the adequacy prerequisite of Rule 52.08(a)(4), is not supported by the record in that it is undisputed that the respondent's being named as the representative of the classes creates a conflict of interest with the interests of the class members he is bound to represent, since he "has a direct pecuniary interest in maximizing the amount of attorneys' fees paid in this case, even at the expense of any benefit bestowed on the class."

Because class actions determine the rights of absent members, due process requires that absent class members be fairly and adequately represented. *Susman v. Lincoln Am. Corp.,* 561 F.2d 86, 90 (7th Cir.1977). Hence, Rule 52.08(a)(4) requires that as a prerequisite to class certification, the trial court must find that: "the representative parties will fairly and adequately protect the interests of the class." *Union Planters Bank, N.A.,* 142 S.W.3d at 735–36. "This prerequisite applies both to the named class representatives and to class counsel." *Id.* at 735. In this claim, however, the issue of fair and adequate representation is only raised as to the class representative, the respondent.

In determining whether the adequacy prerequisite is satisfied as to a class representative, as here, the trial court must consider whether the named representative has any conflicts of interest

that will "adversely affect the interests of the class." *Id.* Stated another way, the court must determine whether the class representative has "interests antagonistic to those of the class." *Susman*, 561 F.2d at 90. In determining whether a conflict of interest of a class representative is sufficient to find that the adequacy prerequisite has not been satisfied, the trial court not only considers whether there is an actual conflict of interest, but whether there is a likelihood that such a conflict may exist. *Id.* at 94.

The appellant claims that it is undisputed from the record that a conflict of interest exists due to the respondent's wife being employed by one of the three law firms representing the classes and receiving year-end bonuses, based on the profitability of the firm, such that the respondent stands to profit from a greater award of attorneys' fees to his attorneys in this case. As such, the appellant contends that the respondent has an incentive, even to the detriment of the class members, to maximize attorneys' fees.

In support of its claim in this point, the appellant cites a laundry list of cases [6] for the proposition that an appearance of impropriety is created, precluding a finding that the adequacy prerequisite for class certification is satisfied, where "close associates and family of class counsel are named as class representatives." The appellant primarily relies on *In re Discovery Zone Securities Litigation*, 169 F.R.D. 104, 108–09 (N.D.Ill.1996). There, the court held that because the representatives of the class were the personal stockbrokers of class counsel, they could not fairly and adequately represent the classes, as defined by the trial court. *Id.* at 109. The concern was that the class representatives would be concerned about maximizing class counsel's attorneys' fees to allow greater investment with the class representatives.

■ Even assuming, *arguendo*, that we agree with the *per se* rule of *Discovery Zone*, that close business associates of class counsel are prohibited from being class representatives, that case is factually distinguishable from our case. Here, the class representative, the respondent, is not a close business associate of class counsel. Rather, he is the spouse of an employee of one of the three law firms, not the lead firm, representing the classes. The question of whether this type of relationship is sufficient to disqualify a person from being a class representative has not been analyzed by our appellate courts or any other courts, federal or state, to our knowledge.

■ While the cases cited by the appellant appear to hold that class attorneys and their relatives or business associates cannot act as class representatives, the respondent cites cases to the contrary. *See Malchman v. Davis*, 761 F.2d 893 (2nd Cir.1985), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976); *Sweet v. Bermingham*, 65 F.R.D. 551 (S.D.N.Y.1975). Our appellate courts have yet to rule on whether, as a matter of law, class attorneys, and their relatives or business associates cannot act as class representatives. However, as noted, *supra*, in this case, we do not have a class representative who is a class attor-

---

**6.** *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir.1984); *Susman*, 561 F.2d at 90; *Brick v. CPC Int'l Inc.*, 547 F.2d 185, 186–87 (2nd Cir.1976); *Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir.1976); *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 108–09 (N.D.Ill.1996); *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 330 (N.D.Ill.1993); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 310 (D.Mass.1987); *Charal v. Andes*, 81 F.R.D. 99 (E.D.Pa.1979); *Flamm v. Eberstadt*, 72 F.R.D. 187, 190 (N.D.Ill.1976).

ney, a relative of a class attorney, or a business associate of a class attorney. Rather, what we have is a class representative who is being challenged because he is the spouse of an employee of a class attorney, whose compensation, in the way of bonuses, may or may not be affected by the outcome of this case. Under these circumstances, as a matter of first impression, we fail to see the logic of laying down a *per se* rule that a relative of an employee/non-lawyer of class counsel cannot serve as a class representative due to a conflict of interest or a likelihood of such a conflict. Rather, we believe that it should be a matter of discretion with the trial court, decided on a case-by-case basis. *Susman*, 561 F.2d at 90.

The case-by-case approach is logical inasmuch as the primary concern or focus of the trial court, with respect to the adequacy prerequisite, is not the interests of the class representatives and class counsel, but the interests of the absent parties. *Union Planters Bank*, 142 S.W.3d at 740. As such, the trial court is required to constantly monitor the case to insure that the interests of the absent parties are being protected. *Id.* "Basic consideration of fairness require[s] that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation...." *Susman*, 561 F.2d at 89. Similarly, the trial court is required to review all settlements and compromises of class claims for fairness with respect to absent class members, as well as approving any agreements for the award of attorneys' fees to class counsel. Rule 52.08(e); *Irvin E. Schermer Trust by Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 337–38 (D.Minn.1987); *Fischer*, 72 F.R.D. 170. Hence, due to the primary focus being on the interests of the class members and the built-in safeguards for monitoring the class

representatives' representation of the absent members, to insure fair and adequate representation, any actual conflict of interest that might arise should be quickly detected and addressed. As such, we fail to see the need for a *per se* rule, disqualifying any class representative who is related to an employee/non-lawyer of class counsel.

Here, we cannot say that the trial court abused its discretion in determining that the adequacy prerequisite was satisfied. The respondent is neither related to any members of the law firms representing the classes nor is he an employee or associate. His only connection to class counsel is that his wife works for one of the firms representing the classes, which is not the lead firm. She is not a partner, shareholder, or an attorney in the firm. There is nothing in the record to suggest that the respondent's wife would be paid any kind of a fee for her husband's involvement in this case. Moreover, the record suggests, that to date, the respondent has demonstrated that he will be a zealous advocate for all class members.

For the reasons stated, the record is sufficient for the trial court to have found that the adequacy prerequisite of Rule 52.08(a)(4) was satisfied in certifying both Counts II and III of the respondent's putative class action petition.

## IV. Common–Question–Predominance Requirement [Rule 52.08(b)(3)]

As discussed, *supra*, if the four prerequisites of Rule 52.08(a) are satisfied, a class action still cannot be maintained, unless, in addition, the trial court finds that one of the three options of Rule 52.08(b) applies. *Craft*, 190 S.W.3d at 379. Here, the trial court found that certification, as to both Counts II and III, was appropriate pursuant to the third option of Rule 52.08(b), a.k.a., common-question-predominance requirement, which reads:

**(b) Class Actions Maintainable.** An action may be maintained as a class action, if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

In this point, Point I, the appellant claims that the record does not support the trial court's requisite finding, under Rule 52.08(b)(3), for class certification of Counts II and III of respondent's class action petition. We disagree.

The common-question-predominance requirement of Rule 52.08(b)(3) is far more demanding than the commonality prerequisite of Rule 52.08(a)(2). *Craft*, 190 S.W.3d at 381. As stated by the Missouri Supreme Court in *State ex rel. American Family Mutual Insurance Co.*, 106 S.W.3d at 489: "[t]he object of Rule 52.08(b)(3) 'is to get at the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party.'" (Citations omitted.) The common-question-predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Craft*, 190 S.W.3d at 382 (citations omitted).

To satisfy the common-question-predominance requirement, not every single issue in the case must be common to all class members. *Am. Family Mut. Ins. Co.*, 106 S.W.3d at 488. "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* And, the "predominant issue need not be dispositive of the controversy or even be determinative of the liability issues involved." *Id.* (quotation marks and citations omitted). "[T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe*, 224 F.R.D. at 458.

The determination of whether a question is a common or an individual question, for purposes of satisfying the common-question-predominance requirement, is based on the nature of the evidence that will suffice to resolve the question. *Craft*, 190 S.W.3d at 382; *Mehl v. Canadian Pac. Ry., Ltd.*, 227 F.R.D. 505, 520 (D.N.D.2005).

If, to make a prima facie showing *on a given question*, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Craft*, 190 S.W.3d at 382 (emphasis added); *see also Mehl*, 227 F.R.D. at 520.

■ Applying the foregoing legal standards for determining the propriety of class action certification, under Rule 52.08(b)(3), as to the satisfaction of the predominance requirement, it matters not that there may be a multitude of individual questions of fact that would have to be resolved for the putative class members to recover under Count II, the MMWA claim, or Count III, the MMPA claim, of the respondent's class action petition, as the appellant contends. The question is whether the record supports the fact that there is at least one significant fact question or issue, dispositive or not, that is common to each putative class with respect to each count.

■ With respect to both Counts II and III, the respondent's theory of the case is that the Dodge Durangos, sold for the specified periods, had defective power window regulators, resulting in power window failures, which could only be fixed by the installation of Bosch motors, which the appellant failed to do. With respect to Count II, the MMWA claim, the respondent contends that the appellant's failure to fix the defective power window regulators that were presented, with the installation of Bosch motors, breached an implied warranty of merchantability. As to Count III, the respondent contends that the appellant was engaged in unfair business practices, with respect to statements and omissions of material fact contained in the appellant's contractual and sales materials, concerning the defective power window regulators that could only be fixed with the installation of Bosch motors. Hence, regardless of which count is invoked, the issue of whether the installation of a Bosch motor is the only fix, with respect to the defective power window regulators, regardless of its design, is common to both. The question then is whether as to each putative class, this same issue is common to the putative class members as to each count.

■ As noted, *supra*, if the same evidence will suffice for each member to make a *prima facie* showing as to a given question, then it is a common question. *Craft*, 190 S.W.3d at 382. Here, the same evidence would suffice for proposed class members, as to Counts II and III, to make a *prima facie* case as to the issue of whether the installation of a Bosch motor would be the only fix with respect to the alleged defective power window regulators of the Dodge Durangos in question. As such, it is a common question. To satisfy the predominance requirement, however, the common question must also be a substantial question. The appellant does not contend that it is not and, in fact, given the nature of the respondent's claims and the class definitions approved by the trial court, it could not be argued fairly that it is not a substantial question.

■ In this point, the appellant claims as to Count II, that the MMWA claim cannot be litigated on a class-wide basis due to the failure to satisfy the common-question-predominance requirement. In that regard, the appellant addresses this issue as to a breach of either an implied warranty of merchantability, an express warranty, or an implied warranty of fitness. The record reflects, however, that the respondent has judicially admitted, such that he is bound thereby, *see Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 395 n. 5 (Mo.App.1984), that he is abandoning any claim, as to Count II, as to a breach of express warranty or an implied warranty of fitness. In any event, as to the remaining breach, a breach of an implied warranty of merchantability, the appellant claims that a class action cannot be maintained because the "core question of whether a particular Durango vehicle is 'not merchantable' cannot be made on a class-wide

basis." This, of course, goes to the issue of whether the respondent can make a submissible case at trial on Count II as to this particular proof element. That, however, is not an issue in determining the propriety of a class action. In determining whether a class action is appropriate, the question is not whether the plaintiff can make a submissible case or prevail at trial, but whether the requirements for class certification have been satisfied. *Craft*, 190 S.W.3d at 377. Hence, whether the respondent can or cannot ever prevail at trial on the "core question" of Count II, as the appellant contends, is irrelevant in determining whether he satisfied the common-question-predominance requirement of Rule 52.08(b)(3).

As to Count III, the MMPA claim, the appellant claims that it cannot be litigated on a class-wide basis on two grounds: (1) the "Trial Court erroneously certified a nationwide class"; and, (2) "the issue of whether a Durango was purchased for business or commercial purposes can be resolved only with individual proof from each class member." The respondent concedes the first point and agrees that the class definition, as to Count III, should be modified, as provided by Rule 52.08(c)(1), to read as the definition does as to Count II, limiting class membership to purchasers who purchased their Durangos in Missouri only. As to the second issue, we fail to see how this would prevent the respondent from carrying its burden as to the common-question-predominance requirement. As discussed, *supra*, the fact that some issues may require individualized fact-finding does not prevent the satisfaction of the common-question-predominance question.

Point denied.

## V. Implied Definiteness Prerequisite

In Point II, the appellant claims that the trial court erred in granting the respon-

dent's motion for class action certification of Counts II and III of his petition because the class definitions approved by the court require prohibited merit determinations in determining class membership in that they "presume[ ] that all window regulator failures have an identical cause and that the only fix for an inoperable window is installation of a Bosch motor window regulator." While the appellant cites one case, *Sample*, 218 F.R.D. at 647, for the proposition that a class definition that requires a merit determination in determining membership in the class, it never discusses in its brief the rationale for this prohibition. As we discuss, *infra*, it is part and parcel of the implicit prerequisite of Rule 23 that a sufficiently definite class must exist at the outset of the litigation for class certification. Hence, because this point and the first subpoint of Point I, in which the appellant claims that the trial court erred in granting the respondent's motion for class certification because the court's class definitions are infirm in that the proposed classes are not readily ascertainable at the outset of the litigation without conducting individualized fact-finding, are both directed, in part, at the implied prerequisite of definiteness of the class definitions in determining class membership, we will discuss them together.

Although not expressly mentioned in Rule 23, our federal courts have found that implicit in the rule is the prerequisite that class certification is improper unless a sufficiently definite class exists. *Wallace v. Chicago Housing Auth.*, 224 F.R.D. 420, 425 (N.D.Ill.2004); *see also Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D.Nev.1985); *Craft*, 190 S.W.3d at 387–88; *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977). This is so in that intuitively, "[a]n imprecise class definition, which does not give

rise to presently ascertainable class members, undermines judicial economy and efficiency, thereby interfering with one of the primary purposes of class action suits." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex.2000). A properly defined class is also imperative for class action certification under the rule for due process reasons. A properly defined class facilitates the identification of individuals affected by the litigation from the outset of the case to provide notice and an opportunity to opt out of the class. *Id.* at 408. A precisely defined class also "identifies the plaintiffs who will be bound by the judgment if they lose, and insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded." *Id.*

A class will not be deemed to exist unless the membership can be determined at the outset of the litigation. *Sanneman*, 191 F.R.D. at 445. "The class must be sufficiently identifiable without being overly broad." *Id.* The "proposed class [cannot] be amorphous, vague, or indeterminate." *Craft*, 190 S.W.3d at 387. "The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hagen*, 108 F.R.D. at 63 (citations omitted); *see also Wallace*, 224 F.R.D. at 425. However, the class "need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action." *Craft*, 190 S.W.3d at 387–88.

A sufficiently definite class exists to justify class certification, "if its members can be ascertained by reference to objective criteria." *Wallace*, 224 F.R.D. at 425 (citations omitted); *see also Craft*, 190 S.W.3d at 387–88; *Intratex Gas Co.*, 22 S.W.3d at 403. "This means that the class should not be defined by criteria that are subjective or that require an analysis of the merits of the case." *Intratex Gas Co.*, 22 S.W.3d at 403. To identify individual class members based on each individual's state of mind would be a "Sisyphean task," requiring "mini-hearings" to determine whether each potential class member had the requisite state of mind to be a member of the class, undermining judicial economy and efficiency, one of the primary purposes of class action suits and making it inappropriate in determining class members at the outset of the lawsuit. *Id.* at 404.

Class definitions requiring merit determinations are also inappropriate in that the members of a class could not be *presently* ascertainable under a class definition relying on merit determinations inasmuch as such determinations could not be made until the case is concluded. *Id.* And, to make tentative findings as to such merit issues, at the outset of the lawsuit, to determine class membership, would be problematic in that such findings are "not accompanied by the traditional rules and procedures applicable to civil trials," yet, such tentative findings, lacking such safeguards, "may color the subsequent proceedings and place an unfair burden on the defendant." *Craft*, 190 S.W.3d at 377. A trial court has no authority to conduct a preliminary inquiry into the merits of a lawsuit when it is determining whether that lawsuit may be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action. *Id.* at 178, 94 S.Ct. 2140.

### A. Merit Determinations

In Point II, the appellant is challenging the class definitions, as to definite-

ness, on the basis that in establishing them, the trial court actually determined the merits with respect to the issue of whether the Bosch motor window regulator was the fix for *every* failed window regulator of the Dodge Durangos in question, without giving it notice that this issue would be determined on the merits in determining the class definitions and giving it an opportunity to defend itself as to that issue. In other words, the appellant is contending that given the class definitions, requiring for membership that a class member have a failed electric window regulator and did not have a Bosch motor installed to repair it, the trial court has made a tentative finding with respect to a merit issue, that the installation of Bosch motor power window regulators will fix every power window failure suffered by the Dodge Durango purchasers in the classes, without having the opportunity to defend.

 While deciding the merits of the action to determine the scope of the class or its maintainability as a class action is prohibited, in "determining whether the class-certification requirements have been satisfied, the trial court may look beyond the pleadings." *Intratex Gas Co.,* 22 S.W.3d at 404. This is so in that "[b]ecause class determinations generally involve considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' the trial court must be able to make a reasoned determination of the certification issues." *Id.* (citations omitted). However, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff['']s general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Craft,* 190 S.W.3d at 377.

Here, looking beyond the pleadings, it is clear that the respondent, in both Counts II and III, is relying for recovery on a common proposition, that the appellant had failed to install Bosch motor power window regulators in the defined Dodge Durangos that had power window failures and that it was the only fix for all such failures. Hence, a purchaser of a Dodge Durango, that had experienced a power window failure and was repaired with the installation of a Bosch motor power window regulator, could not be a plaintiff in the respondent's lawsuit based on the theories pled, thus, the need to exclude such purchasers from the classes.

 To determine whether a proposed class definition includes a merit determination, a court must determine whether it rests on a paramount liability question. *Intratex Gas Co.,* 22 S.W.3d at 404.

A proposed class definition that rests on the paramount liability question cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made. A fail-safe class that is based on resolving the ultimate liability issue is bound only by a judgment favorable to plaintiffs but not by a judgment favorable to defendants. Certifying a fail-safe class inevitably creates one-sided results. If the defendant is found liable, class membership is then ascertainable and the litigation comes to an end. A determination that the defendant is not liable, however, obviates the class, thereby precluding the proposed class members from being bound by the judgment.

*Id.* at 404–05 (citations omitted). Thus, to determine whether a class definition improperly includes a merit determination, a court must ask itself, will the class still

exist even if the defendant of the class action lawsuit wins at trial? *Id.* at 405. *See Hagen,* 108 F.R.D. at 63 (holding that because class would consist of persons whose constitutional rights have been violated by city, a legal determination that no rights had been violated would mean there was no class); *Dafforn v. Rousseau Assocs., Inc.,* 1976 WL 1358, 1976-2 Trade Cases P 61 at 219 (N.D.Ind.1976) (holding that because class would consist of only those homeowners who paid illegal fees, a determination that defendants did not charge illegal fees would mean there was no class). If a reviewing court determines that a victory by the defendants at trial means that no class ever really existed, then the class definition improperly includes a merit determination and the trial court abused its discretion in certifying the class. *Intratex Gas Co.,* 22 S.W.3d at 405.

Here, it is obvious to us that even if it is determined at trial that the appellant was not liable for its failure to install Bosch motor power window regulators, there would still exist two classes of individuals (1) who purchased a new Dodge Durango, (2) within four years of the filing of the complaint on 10–10–00, (3) who had returned to an authorized DaimlerChrysler dealer for service to failed electric window regulators, (4) who have not received Bosch Window Regulators, and (5) who still own the Dodge Durango. Hence, the class definitions do not make any merit determinations.

In claiming as it does in Point II, the appellant is contending that in limiting the proposed classes to Dodge Durango purchasers who had not had a Bosch motor power window regulator installed in their vehicles, the trial court had predetermined the merit issue that this was the *only* fix for the power window failures experienced. That is not so. The class definition requirement, that the class member not own a Dodge Durango in which a Bosch motor power window regulator was installed, does not reflect that the trial court has predetermined that the installation of a Bosch motor power window regulator is, in fact, the only fix for any particular power window failure, which would be an ultimate liability issue, which is prohibited. *See id.* This requirement only requires that the trial court determine whether any particular Durango, purchased during the defined period, has a Bosch motor power window regulator. As such, the definitional requirement, that the class member own a Durango that does not have a Bosch motor power window regulator, does not require a prohibited merit determination, as the appellant claims, but constitutes an objective, acceptable criteria for determining the members of the proposed classes.

## B. Individualized Fact–Finding

■■■ In its first subpoint in Point I, the appellant claims that the trial court erred in granting the respondent's motion for class certification because the court's class definitions are infirm in that the proposed classes are not readily ascertainable at the outset of the litigation without conducting individualized fact-finding. Specifically, the appellant claims that the class definitions in question are infirm in that they require the trial court, in determining class membership thereunder, to conduct individualized fact-finding or separate mini-hearings to determine if a Durango purchaser has experienced a "failed electric window regulator" or, if so, whether it was repaired with the installation of a Bosch motor power window regulator.

As we note, *supra,* if a class definition requires merit determinations or the consideration of subjective criteria to determine class membership, the definition is infirm. The appellant, however, in claiming as it does in this subpoint, suggests

that any individualized fact-finding necessary to determine class membership renders the particular class definition in question infirm. We find no support in the cases cited by the appellant for that proposition: *Sanneman,* 191 F.R.D. at 445, and *Vietnam Veterans Against the War v. Benecke,* 63 F.R.D. 675 (W.D.Mo.1974). Rather, in *Sanneman,* the court decried the individual fact-finding that would have to be conducted with respect to the subjective criteria of the definition in question, 191 F.R.D. at 445–47, as was the case in *Vietnam Veterans,* 63 F.R.D. at 681. There is nothing in the language of either case that leads us to believe that any and all individualized fact-finding necessary in determining class membership universally renders a class definition infirm. In fact, as the respondent points out, in *American Family,* the Missouri Supreme Court was faced with essentially the same argument as is raised here and affirmed the trial court's class action certification. 106 S.W.3d at 489.

Here, we find nothing subjective about the two criteria of the class definitions attacked by the appellant: failed electric window regulators and the failure of the appellant to install a Bosch motor to fix it. They are straightforward and necessary in delineating the members of the defined classes.

Point denied.

## VI. Superiority Requirement [Rule 52.08(b)(3)]

In Point VI, the appellant claims that the record does not support the trial court's requisite finding, under Rule 52.08(b)(3), for class certification, that: "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Specifically, the appellant claims that the record does not support a finding that a class action suit in this case is superior to other available methods in that: (1) the "resolution of a plethora of individual issues will render a class trial unmanageable, unfair and inefficient"; (2) other methods are available which would be more efficient in adjudicating the controversy raised by the respondent; and, (3) "there is no evidence of any other actions involving the Durangos windows, which negates the need or advantages of class litigation."

In determining whether a class action is superior to other available methods for the fair and efficient adjudication of the particular controversy in question, the trial court is required to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Rule 52.08(b)(3). This is not an exhaustive list of the factors to be considered in determining whether the superiority requirement is satisfied. *Citgo Refining & Mkt., Inc. v. Garza,* 187 S.W.3d 45, 70 (Tex.Ct. App.2005). The superiority requirement requires the trial court to balance, in terms of fairness and efficiency, the merits of a class action in resolving the controversy against those of "alternative available methods" of adjudication. *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3rd Cir.1996). The balancing must be in keeping with judicial integrity, convenience, and economy. *Scholes,* 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.,* 76

F.R.D. 149, 172 (W.D.Mo.1977). In balancing the relative merits of a class action versus alternative available methods of adjudicating the controversy, the trial court may consider: "the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir.1974). The primary focus of the superiority analysis is the efficiency of the class action over other available methods of adjudication. *Eovaldi v. First Nat'l Bank of Chicago*, 57 F.R.D. 545, 547 (N.D.Ill.1972).

█ The appellant first contends in this point that the proposed class actions, as to Counts II and III of the respondent's petition, would be unmanageable given the "individualized evidence" and "mini-trials" that would be required in determining numerous individual issues that would have to be resolved in the class action of this lawsuit. As the respondent contends in his brief, this is essentially a rehash of what the appellant unsuccessfully claimed in its first subpoint in Point I, *supra*. As there, we fail to see in this point an avalanche of individual issues requiring "individualized evidence" and "mini-trials" that would render the putative class actions unmanageable.

The appellant next contends the merits of the alternative methods available for resolving the controversy in a fair and efficient manner outweigh any merits of resolving them by class action. In so contending, the appellant points to the fact that individuals in Missouri, who purchased Dodge Durangos in 1998 through 2000 and still own them, which have defective power window regulators without Bosch motors, could, in order to be made whole: (1) seek assistance from an authorized dealer or contact DCC's customer service directly by calling a toll-free telephone number; (2) pursue arbitration through DCC's Customer Arbitration Board; (3) invoke Missouri's Lemon law; or, (4) file an action in small claims court. While these may be effective alternative methods of adjudicating the controversy in question, that fact alone does not mean they are superior when balanced against resolution by class action.

In contending that class action is superior to other available methods of adjudication, the respondent asserts that there may be hundreds or even thousands of claims, based on the class definitions set forth by the trial court. Hence, judicial economy would dictate that all such possible claims be tried in one class action lawsuit, rather than numerous lawsuits. The respondent also asserts that class action would be superior given the "vast majority of putative Class members are unaware that their rights were violated in that they were deceived by DaimlerChrysler's conduct and relied on its inaction until such a time as their express written warranties, which of little good with regard to window defects complained of in this case, were expired." Hence, judicial economy and efficiency would dictate that all such possible claims be tried in one class action lawsuit. Finally, the respondent asserts that class action would be superior to all other methods available in that, in this case, in the absence of class action, the potential expense of the litigation in relation to the relatively small recovery amount for each plaintiff would prevent most, if not all, injured parties from initiating a lawsuit. Hence, judicial economy and efficiency would dictate again that all such possible claims be tried in one class action lawsuit, rather than allowing numerous injured parties to abstain from vindicating their rights in court. Thus, balancing the efficiency of one class action lawsuit against the efficiency of alternative

available methods of adjudication, we cannot say that the trial court abused its discretion in certifying for class action both Counts II and III, with respect to the superiority requirement of Rule 52.08(b)(3).

Point denied.

## Conclusion

The order of the Circuit Court of Boone County, certifying both Counts II and III for class action, pursuant to Rule 52.08 and § 407.025, is affirmed.

ELLIS and NEWTON, JJ., concur.